The court suspended their opinion till further order.

---

THE UTICA INSURANCE COMPANY, plaintiffs in error, *against* HENRY SCOTT, Jr. defendant in error.

In an action by the Utica Insurance Company, (incorporated by stat. sess. 39, ch. 52,) against the indorser of a promissory note, he pleaded that the plaintiffs, contrary to the statutes, (sess. 26, ch. 71, s. 2,) subscribed to, and became members of an association, institution or company, and became proprietors of a bank or fund, for the purpose of issuing notes, receiving deposits, making discounts, and transacting all other business which incorporated banks may and do transact, by virtue of their respective *acts of incorporation; that for this purpose they establish an office or banking

[*710]

*ALBANY, Dec. 1826.*

Utica Ins. Co.
v.
Scott.

house, and issued notes, received deposits and made discounts, as incor·
porated banks may, &c.; and averred that the note in question was made
for the purpose of being, and was discounted at their office, they knowing
for what purpose it was made.   The plaintiffs replied the act constituting
them a corporation, which authorized them to loan their surplus funds;
and alleged that they lent a part of their surplus funds on the security of
the note showing the particulars; without this, that the plaintiffs had sub-
scribed and become members of an association, &c., (as in the plea) for the
purpose in the plea set forth; concluding with a verification.   Special de-
murrer, assigning for cause, that the plaintiffs had not, in their replication,
confessed and avoided, traversed or denied, that they illegally and corrupt-
ly established an office or banking house, and issued notes, received depo·
sits and made discounts, as stated in the plea.   *Held,* that the plaintiffs
were entitled to judgment upon the demurrer.

On demurrer, judgment should be against the party who commits the first
fault in substance.   Per SPENCER and COLDEN, senators.

Want of certainty in a pleading may be cured by answering over.   Per
SPENCER, senator.

A plea is good, if it can be made so by facts consistent with its averments.
Per SPENCER, senator.

Joining an association, &c., for the purpose of exercising banking powers, is
the offence aimed at by the restraining law, (sess. 36, ch. 71, s. 2; 2 R. L.
234.)   Per SPENCER, senator.

Issue may be taken on new and material matter in the inducement to a tra·
verse, or it may be demurred to.   Per SPENCER, senator.

The inducement to a traverse, must be sufficient in substance to defeat the
allegation of the opposite party.   Per SPENCER, senator.

The Utica Insurance Company may lend their surplus funds on bond, note,
or mortgage.   Per SPENCER, senator.

The form of a judgment of ouster on *quo warranto* against a corporation. Per
COLDEN, senator.

It determines the right forever as to all persons; and may be given in evi-
dence without being pleaded, by parties and all others, on an issue involv·
ing the rights upon which it has passed.   Authorities to this point.   Per
COLDEN, senator.

A special demurrer includes a general demurrer.   Per COLDEN, senator

ON error from the supreme court.   The plaintiffs in er-
ror brought an action in the supreme court against the de-
fendant in error, as the indorser of a promissory note for
$800, dated June 26, 1818, made by James M'Namee, pay-
able to F. Stranahan, or order, sixty days after date, at
the office of the Utica Insurance Company, and indorsed
by Stranahan to the defendant, who indorsed the same to
the plaintiffs.

The defendant pleaded that the plaintiffs ought not to

have or maintain their action, &c. because, on the 1st of *September, 1816, the plaintiffs, unauthorized by law, and contrary to the form of the act in such case made and provided, did subscribe to and become members of an association, institution or company, and did become the proprietors of a bank, or fund, for the purpose of issuing notes, receiving deposits, making discount, and transacting all other business which incorporated banks may and do transact, by virtue of their respective acts of incorporation; and that, in pursuance of such unauthorized, illegal and corrupt purposes and intent, the plaintiffs afterwards, &c. at Utica, &c. "established an office, or banking house, and issued notes, received deposits, and made discounts, as incorporated banks may and do, by virtue of their respective acts of incorporation;" and that on the 26th of June, 1818, (the plaintiffs so continuing thus illegally and corruptly to issue notes, receive deposits and make discounts as aforesaid,) the said James M'Namee made the said promissory note, and procured the said F. Stranahan and the defendant to indorse the same, as sureties, for his the said drawer's benefit, with the intent and for the purpose of having the said note, so made and indorsed as aforesaid, discounted by the plaintiffs for his use and benefit, at their office, or banking house, so illegally established at Utica, &c. That on the said 26th of June, 1818, the said James M'Namee gave and delivered the said note, so made and indorsed, to the plaintiffs, to be discounted by them, for the use and benefit and on the account of the said James M'Namee; and that the said plaintiffs, knowing that the said note was so made and indorsed, with the intent and for the purpose of being discounted by them at their office, or banking house, so illegally established as aforesaid, at Utica, &c. did then and there accept the said note of the said James M'Namee, and discounted the same for the use and benefit of the said James M'Namee, and on his account. By means whereof, and by force of the statute in such case made and provided, the said note and the said indorsement so made thereon by the defendant, were and are void and of no effect in the law, &c. with a verification, &c.

ALBANY,
Dec. 1826.

Utica Ins. Co.
v.
Scott.

\*To this plea the plaintiffs replied, that by an act of the legislature of the people of the state of New York passed the 29th of March, 1816, they, the said Utica Insurance Company, were constituted and declared to be, from the passing of the said act until the first Tuesday of July, 1836, a body politic and corporate, in fact and in name, and by the name of the Utica Insurance Company; and further, that by force and virtue of the said act, and the provisions thereof, they were, and still continued to be, a body politic and corporate in fact and in name, for certain purposes in the said act mentioned; that by the provisions of the said act, a certain stock or fund was created, which was divided into two thousand shares at $250 each; that by the provisions of the said act, the directors for the time being were empowered, among other things to invest, by loan, the funds of the corporation which the business of insurance might not actively employ; and that the said Utica Insurance Company, having funds on hand which the business of insurance did not actively employ, on the 26th of June, 1818, at the place therein set forth, did loan to the said James M'Namee a certain sum of money, out of the funds above named, and did then and there receive, and accept from the said James, the promissory note above mentioned, indorsed by the said defendant, as security for the said money so loaned, as by the provision of the aforesaid act of incorporation they had a right to do; without this, that before the making of the said promissory note, the said Utica Insurance Company, the plaintiffs, unauthorized by law, contrary to the form of the act in such case made and provided, did subscribe to and become members of an association, institution or company, and proprietors of a bank, or fund, for the purpose in said plea set forth; and this the said plaintiffs are ready to verify, wherefore they pray judgment and their damages, &c.

The defendant demurred to the replication, and assigned for causes of demurrer, that the plaintiffs, in their replication, had not confessed and avoided, traversed or denied, that the plaintiffs did illegally and corruptly establish an

office or banking house, and issue notes, receive deposits and make discounts, as stated in the plea.

*The demurrer was argued in the court below, and in May term, 1821, judgment was rendered for the defendant.

This case, with the arguments of counsel and opinion of the supreme court, will be found reported in 19 John. 1 to 7, by the title of *The Utica Insurance Company* v. *Scott.*

The reasons for the judgment below were now assigned by the supreme court, substantially as in that report of the case.

The points relied on for reversal were,

1. That the replication is sufficient, and traverses all the material parts of the defendant's plea;

2. The defendant's plea itself is bad, inasmuch as the Utica Insurance Company is an incorporated company, authorized by law to loan money on the note in question; and is not within the provisions or purview of the act " to restrain unincorporated banking associations," passed the 11th of April, 1804, and revised in the year 1813.

The arguments now urged upon the above points will be found substantially reported by Mr. Johnson, in the book above referred to; and are, therefore, not given here.

This cause was argued here by

*Talcott,* (attorney general,) for the plaintiffs in error.

*A. Van Vechten,* for the defendant in error, and

*T. A. Emmet,* in reply.

SPENCER, Senator. The defendant demurred generally to the plaintiff's replication, and also assigned special causes of demurrer. In such a case the rule is rigid, that judgment must be given against the party whose pleading was first defective in substance. To apply this rule, we must begin with an examination of the declaration, which has not been objected to, and is believed to be good. The next pleading is the plea of the defendant, which has been objected to as defective in substance on several grounds. It

On demurrer, judgment should be against him who commits the first fault in substance.

Plea.

alleges that the plaintiffs, unauthorized by law, did sub-scribe *to and become members of an association, and pro-prietors of a fund for the purpose of making discounts, and did establish an office, issued notes and made discounts; and at their office discounted the note in question. This summary is believed to be a perfect skeleton of the plea. It will be perceived that it does not aver that this note was discounted out of the *fund*, of which the plaintiffs were il-legally proprietors. Considering it as admitted, that the plaintiffs had a right to make certain loans, this omission would probably have been fatal, had it not been cured by the plaintiffs' pleading over, and in their replication aver-ring that they did loan to the maker of the note a certain sum of money, "out of the funds above named;" that is, the funds of the corporation not actively employed, and did receive the promissory note in question as security for

<span style="float:left">Want of cer-tainty in a plea may be cured by replying over.</span> the money so loaned. This is exactly one of those cases stated by Mr. Chitty, in the first volume of his Treatise on Pleading, 547, where the want of sufficient certainty in the plea, is aided and cured by the replication.(a)

Another objection to the plea, growing out of the argu-ment of the plaintiffs' counsel, is, that it states the plaintiffs to have become members of an association, &c.; that the very terms "association, institution or company," imply more than one number, and that as the plaintiffs, the cor-poration of the Utica Insurance Company, are but one per-son, and no others, with whom they were associated, are named in the plea, there was no company, &c., within the meaning of the restraining act. The answer given to this objection, that the members of the company are persons, and although incorporated, yet if they act beyond the scope of their authority, they still remain persons, would have been complete and satisfactory, if the plea had averred that certain individuals, naming them, and others, had formed a company, and illegally discounted this note; for then it would be immaterial what name or shape they assumed. But instead of such an averment, it alleges that the corpo-

---

(a) *Hobson* v. *Middleton*, 6 B. & C. 295, S. P.

ration became members, &c. The answer most satisfactory to me is, that the corporation might become a *member with some other corporation, or natural persons, of an illegal association, and it was not necessary for the plea to set forth the name of that association, or of the other members. I construe the language of the plea to aver, that the insurance company did become a member of an illegal association, and one of the proprietors of an illlegal fund, and then, by the aid of the replication, that it says, out of which fund this note was discounted. If this be not its legal construction, it is bad in substance; and I understand it to be an established rule, that where a pleading can be made good by any state of facts consistent with its averments, it is sufficient; and under this plea the defendant might have proved an illegal association, &c., between this company and another.

ALBANY,<br>Dec. 1826.<br>——————<br>Utica Ins. Co.<br>v.<br>Scott.

*A plea is good if it can be made so by facts consistent with its averment.*

The forming an association and the proprietorship of a fund, for the purpose of discounting, are, undoubtedly, the offence aimed at by the restraining law. (Sess. 36, ch. 71, s. 2; 2 R. L. 234.) The criticism of the plaintiffs' counsel, that the offence was in the purpose, and not in the act, is, I think, unsound. The offence of burglary, is the breaking of a house, with intent to commit a felony, and yet an indictment, alleging the breaking and actual commission of a felony, has always been held good. This allegation in the plea then, that the insurance company did become members of such an association, and proprietors of such a fund, and did discount this note, aided by the replication that it was discounted out of such fund, is, I think, a good and sufficient bar to the plaintiffs' recovery in form; and this is the substantial part of the plea. This allegation the plaintiffs have met directly and in terms. They might have said, in simpler language, that the insurance company did not become a member of such an association, and proprietors of such a fund; and put themselves upon the country. Instead of doing so, they have commenced their replication by stating their act of incorporation, and averring that the loan was made, and the note taken, pursuant to its autho-

*Joining an association, &c., for the purpose, &c., is the offence intended by the restraining act. 2 R. L. 234.*

rity. This is called inducement to the replication. It gives the reason and the ground upon which the plaintiffs deny the plea; and having *given the ground, it proceeds to deny the substantial part of the plea, by saying, "without this, that the insurance company did become members of an association and proprietors of a fund for the purpose in the plea set forth;" that is, divested of technical terms, it denies that the insurance company became members of any illegal association, &c., in any other way than as a corporation under their charter. In that way they did become members, &c.; without that, (without the act of incorporation, or beyond its authority,) they did not become members of an association, or proprietors of a fund, &c. If I have succeeded in analyzing this plea and replication, they are both good in form, and have fairly met each other, point to point. But the replication has introduced new matter in its inducement; it has set forth the fact of the incorporation of the company, and the powers granted thereby. This was correct, (1 Chitty, 596,) and the defendant might take issue on any fact thus set forth in the inducement, or demur to it. He has chosen the latter; and now the rule is, "that the matter, stated as inducement to the traverse, must appear to be sufficient in substance, to defeat the opposite party's allegation." Thus we have arrived through this labyrinth, to the great question of law between these parties; whether the facts set forth in the inducement to the plaintiffs' replication are a sufficient answer, in substance, to the defendant's plea. Those facts are admitted by the demurrer, precisely as they are alleged by the plaintiffs; and this principle will be found very much to vary the question from that which has been argued before us. The plea alleges that this note was discounted. On the contrary, the replication avers, that "the plaintiffs did loan to the maker a certain sum of money out of the funds above named, and did receive the promissory note in question as security for the money so loaned; as, by the provisions of their charter, they allege they had a right to do." This conclusion of the right of the plaintiffs is not admitted by the demurrer; but the facts on which it is founded are ad-

mitted.  What was before a discount, has now become a **ALBANY,** **Dec. 1826.** loan, and a loan *out of the funds of the corporation, which ──────── **Utica Ins. Co** the business of insurance did not actually employ.  The **v.** questions, then are, 1st, had the plaintiffs a right to *loan* **Scott.** *money* out of those funds?  2nd, if so, had they a right to take a security for it; and 3d, are they inhibited from taking a note as such security?

It will be perceived at once, that if this be a correct **The questions.** statement of the questions really presented by these pleadings, they do not involve the right of the company to exercise banking powers.  We have various companies in this state, authorized to loan money, which are not banks. That this power of loaning is truly the only question on these pleadings, I have endeavored to show, by a critical and faithful examination of them.  The counsel for the parties seem to have chosen to present and discuss other questions; those for the company, possibly in the hope of obtaining the decision of this court, that it does possess banking powers; and those for the defendant, probably deeming it weak ground for the plaintiffs, have been willing to meet them upon it.  But as we sit here to determine questions presented by the record, and not such as the counsel may choose to urge, I proceed to consider those already stated.

In the opinion of the supreme court, in the case of the *People v. Utica* People against these same plaintiffs, delivered by Ch. J. *Ins.   Co.* **15.** *John.* 384. Thompson, in 15th John. 384, it is conceded in terms, that under the 9th section of the plaintiff's act of incorporation, **The Co. may** **loan money on** " the surplus funds may no doubt be loaned at interest. **bond, note or** The second section of the act prohibits the loaning for cer- **mortgage, un-** **der their act** tain specified purposes; but the loaning for any other pur- **of incorpora-** **tion, sess. 39,** pose, and in any other way, not prohibited by law, is au- **c. 52, p. 47.** thorized and included in the general power to invest the surplus capital, &c."  A bond or note, given to the corporation on a loan of money, creates a debt due to them, and the payment may be secured by mortgage, by the express authority here conferred."  This is the language of the judges, who denied that the plaintiffs had banking powers. Whether a mortgage was taken or not, cannot *affect the        **[*718]**

right of taking a bond or note. Indeed, a mortgage being but collateral to the principal security, must share the same fate; and if one is void, the other must be also. Here there is a distinct and unqualified assertion of the right of the plaintiffs to loan their surplus funds, and to take a note as evidence of the debt. And it is not an incidental remark, out of the main argument, but a part of that argument, and a fair exposition of the meaning of the court.

This opinion is advanced also in special reference to the restraining act, which had just been considered by Ch. J. Thompson. The proviso to the 9th section, that the investment of the surplus funds should not be made in a. manner contrary to the laws of the state, he does not consider as amounting to a prohibition of such investments in any other way than in banking business. Such *provisos* must always be understood in reference to the subject matter, and not abstractly: otherwise they would be repugnant to the powers granted, and repeal them. For instance, in the charters of the Lombard companies, although they are expressly authorized to take more than seven per cent. interest on loans on the deposit of goods, yet the same provisos are found, that they shall not violate any laws of this state; and of course, the statute of usury among the others. The true and fair meaning of such a proviso must be, that the company shall not violate any laws other than such as are expressly or impliedly repealed in respect to such company, by the act of incorporation.

*N. Y. Firemen
Ins. Co. v. Ely,
2 Cowen, 700.* In the case of the *N. Y. Firemen Insurance Co.* v. *Ely,* (2 Cowen, 700,) Justice Sutherland places his objection to that company's loaning money, on the ground that a precise and particular mode of investment was provided by the charter, "thus by the strongest implication prohibiting any other mode of investment, and destroying the inference which might have resulted from the absence of all regulations on the subject." In the charter of the plaintiffs there is no such regulation. In the same case, page 711, Ch. J. Savage puts his opinion upon the ground that *the company had discounted the note of Ely; and he is very particular in stating what he means by that term, by giv-

ıng the definition of Sewall, J. of banking: "an authority to deduct interest at the commencement of loans, or to make loans upon discounts, instead of the ordinary form of security for an accruing interest;" and the chief justice quotes the words of the restraining act, to show that making discounts was prohibited. That is not the question in this case, the replication averring a loan, and that the note was given as surety; and that averment being admitted by the demurrer.

I do not perceive, in this view of the case, that the restraining act has anything to do with this loan, and if it did apply to a loan, the plaintiff are exonerated from its operation by their charter, which is so far a repeal of the act, as to allow them to invest their funds. The most usual and ordinary mode of investment, is by loans. The length of credit given, must depend on the exigencies of the company. Short loans must be necessary, to enable them to command their funds on the occurrence of a loss. We cannot pronounce a loan not to be an investment, within the meaning of the charter, merely because it has a short credit; and the very reason of allowing the company to invest their surplus funds, is, that they may not lie idle, and that the company may be receiving interest on them. This object would be defeated, by requiring that the loans should be for a long term, for such would not answer the exigencies of the company. I think, therefore, that there can be no doubt that a loan on short credit is within the fair view and meaning of the power given to the plaintiffs; and if they can make such loan, I do not perceive any reason for requiring one kind of security more than another. I do not see why a note may not be taken as well as a bond. I am therefore of opinion, that the judgment of the supreme court be reversed.

JONES, Chancellor, also delivered his opinion in favor of a reversal.

*COLDEN, Senator. If I do not entirely mistake the legal effect of the judgment in the case of the people against the

*Margin note:* ALBANY, Dec. 1826.

Utica Ins. Co,
v.
Scott.

[*720]

ALBANY,
Dec. 1826.

Utica Ins. Co.
v.
Scott.

People v. Utica
Ins. Co.  15
John. 358.

present plaintiffs in error, the matters now to be decided by this court are much more limited than they were supposed to be, by the counsel who argued this cause before us.

In the case of the *People* against the *Utica Insurance Co.*, to which I have referred, an information in the nature of a *quo warranto* was filed by the attorney general against the company, calling upon them to show by what warrant they claimed to discount notes, and to carry on other banking operations.

The defendants pleaded to the information, that under their act of incorporation they had a right to discount notes, and to bank, so far as to invest in that business their funds not employed in insurance.

To this plea there was a demurrer; and upon that demurrer it was decided that the plaintiffs had no right to any of the privileges they claimed; of course, that the company had no banking privileges; that they could employ no part of their capital in discounting notes; and a judgment of ouster was awarded.

It was contended before us, by the counsel for the plaintiffs in error, that the defendant in the court below should have pleaded there the judgment on the *quo warranto* as an estoppel; but as this had not been done, neither the court below, nor this court, could take any notice of the judgment of ouster. No authority was cited to support this position; and it is one to which I cannot assent.

I do not doubt the power of any court to change its opinion. It is a power which the supreme court has frequently exercised, as is manifested by a number of cases, for a reference to which I am indebted to one of the gentlemen concerned for the plaintiffs in error. I acknowledge that a court may render its judgment as at the time it may conceive the law to be, however inconsistent its latter may be with its former views. But I deny the power of any court to destroy the effect of a former judgment, or to disturb, or even to question rights, which are settled *by the adjudication of a competent tribunal, otherwise than by reversing the judgment when it is brought before it by due process of law

[*721]

The plaintiffs in error avowed, in answer to the information, that they had used the privelege of banking, and of discounting notes, and claimed a right to continue to do so. The supreme court decided that they had no such rights, and that their usuage was a usurpation. The judgment of ouster, if it be comformable to the entry as I find it in Kyd on Corporations, and in several of the old books of entries to which I have refered, (2 Kyd, 407, Rast. Ent. 540. Co. Ent. 527, 559, &c.) is, that from the privileges and franchises which the defendants claimed, they should be ousted, and should in no way use or intermeddle with them, or any of them, but should be altogether excluded from the same.

*Margin: ALBANY, Dec. 1826. Utica Ins. Co. v. Scott.*

*Margin: Form of judgment of ouster of a corporation.*

The judgment of ouster, unlesss it be reversed by writ of error, determines forever, and as to all persons, the right. When the supreme court decided, that the plaintiffs below had no right to exercise the privileges they used, the judgment became as much the law of the land, as a clause in their charter, supposing it a public act, expressly restraining them, would have been.

*Margin: It determines the right for ever as to all persons; And need not be pleaded.*

In the case of Siderfin, of the *Attorney General* v. *Trinity House*, it is said that after demurrer, a defendant may amend his plea to a *quo warranto ;* and the reason, says the book, is, that the trial is of the highest nature, and as peremptory as a writ of right. This, however, relates to a writ of *quo warranto ;* but I do not know that there is any difference, in this respect, between a writ and an information.

*Margin: Cases showing this.*

*Margin: Attorney General v. Trinity House, 1 Sid. 54.*

In the case of *Rex* v. *Hebden*, upon issue joined, whether bailiff or not, a former judgment of ouster against the defendant was read in evidence ; and upon a motion for a new trial, it was held, that it was properly admitted, and was lately so done, says the reporter, on a trial at bar relating to the Corporation of Oxford.

*Margin: Rex v. Hebden, 2 Str. 1109.*

In the case of *Symmers* v. *Regem*, (Cowp. 497,) the defendant claimed an office, under one who had been ousted *from the right to confer the office, and it was said that the judgment of ouster was evidence against the defendant, although he was not a party to the *quo warranto*, and might have been a stranger to the suit.

*Margin: Symmers v. Regem, Cowp. 497.*

*Margin: [*722]*

It is to be noted how much stronger this case is, than that which we are considering. A judgment of ouster, in the book case, is considered as proper evidence, although the defendant who was to be affected by it, was a stranger to the suit in which the judgment of ouster was rendered. Here the plaintiffs in error, who are to be affected by the judgment, were the parties who litigated the questions which arose on the prosecution of the *quo warranto.*

The expressions of Lord Mansfield, in that case indicate his opinion, that a judgment of ouster pronounced against the defendants, would bar them forever, as to any right which was in issue on the trial of the *quo warranto* then *sub judice.*

In the case of *Rex* v. *Hearle,* (Str. 628,) *Reynolds,* Justice, says, " whether the defendant ought to have been bound or not," (that is, by a judgment of ouster which had been previously rendered against him on an information in nature of a writ of a *quo warranto,*) " I am not to consider, since, in fact, he is barred, and will be so, till that judgment be reversed by right of error."

It is true, that where an office or franchise is claimed, as in the case of *Symmers* v. *Regem,* as derived from one who might have had authority to grant the office, or confer the franchise, and there be a judgment of ouster against him under whom the office or franchise is claimed, the person claiming under such a derivative title, may show that the judgment of ouster to which he was no party, was obtained by fraud or collusion. But where there has been a judgment of ouster, the defendant against whom that judgment was rendered, can never question it but by writ of error.

The cases I have cited appear to me to fully establish these two points : 1st. That a judgment of ouster is conclusive as to the party against whom it was pronounced, until reversed ; and 2dly, That all the world are entitled *to the benefit of that judgment, and may show it without pleading it as an estoppel, or otherwise. In the language of some cases cited on the part of the plaintiffs in error, it is matter of public law, and need not be pleaded.

[*723]

Let us suppose that the plaintiffs had replied broadly, that by their charter the legislature had made them a bank and that as bankers they had discounted the note; would not a demurrer have been the proper answer to such a replication? The defendant could not have been required to join an issue of fact on such a replication. A demurrer would have been the proper answer, because the defendants set up matter of public law as their justification, and whether there was or was not such public law, could only be properly brought before the court by demurrer.

ALBANY,
Dec. 1826

Utica Ins. Co.
v.
Scott.

Replication bad in substance.

But the plaintiffs in error have replied, that they loaned money on the note in question; and that by their charter they had a right to do so. The judgment of ouster has determined, that they had no such right, or, in other words, that there was no law in existence which conferred on them this right, or exempted them from the operation of the general restraining act. The plaintiffs having appealed to a law for their justification, when there was no such law, a demurrer was, in my opinion, the proper answer to their replication. The point of controversy between the parties, consisted of matter of law, and not of fact, and therefore was, by the demurrer, properly put for the determination of the court.

How absurd and inconsistent would it be, if after the supreme court, in the suit of the People against the present plaintiffs, had determined that by the law of the land they were not permitted to bank, the same court, on the same issue, should decide that their charter gave them, and that they might use banking privileges. In my opinion, the demurrer is well taken, considered as a general demurrer, which it undoubtedly may be, although causes be assigned.

A special demurrer includes a general demurrer.

But the plaintiffs in error do not, by their replication as they did by their plea to the *quo warranto*, insist on a right to bank. They have, with a wily foresight, and great ingenuity, avoided this issue.

[*724]

In answer to the allegations in the plea, that the plaintiffs in error became members of an association, and did become proprietors of a fund for issuing notes, receiving

deposits, making discounts, &c., that they established an office, did issue notes and make discounts, that the note in question was made to be discounted at their office or bank, and was actually discounted by the plaintiffs in error, at their bank, they content themselves with answering, that by their act of incorporation, they were empowered to invest by loan, their funds, which the business of insurance might not employ; and that having such funds, they loaned a part of them on the note, as they had a right to do.

Now it is to be observed, that by this replication, the plaintiffs in error attempt to put in issue a part of the very same matter which was tried on the *quo warranto*, not in the same words, indeed, because now they do not say they had a right to discount or bank; but in that case it was insisted by their plea, as it is now by their replication, that they had a right to employ their surplus funds in discounting, or loaning money on notes. It was decided by the judgment on the *quo warranto*, that they had no such right; that whatever might have been their right as a corporation, independently of the restraining act, that act applied to all incorporations not having, by their charter, the privilege of banking. That the charter of the plaintiffs gave them no such privilege; and therefore, they could do no banking business. Notwithstanding this decision, the plaintiffs now attempt to bring in question the same right. I think the rules of pleading, as much as the dictates of common sense, are opposed to such evasion.

The allegations in the plea, that the plaintiffs had established a bank, issued notes, received deposits, and made discounts, were material allegations, which they were bound to answer. But these averments, or any of them, the plaintiffs in error have not confessed, avoided, traversed or denied. They content themselves with saying, *that they loaned money on the note out of their surplus funds and traverse no other allegation of the plea, than that which is least material, and perhaps altogether so, to wit, that they become subscribers to a bank or fund, for the purposes in the plea set forth.

The replication does not only leave unanswered material allegations of the plea, but it sets up no new matter in accordance with those facts; for if it be true that the plaintiffs had in fact set up a bank, were receiving deposits and making discounts, and that the note in question was discounted at their bank, how does it avoid those facts, to say that they loaned money on the note out of their surplus funds, and to traverse or deny that they became subscribers to a fund for banking purposes. The replication is, therefore, insufficient, for the causes assigned in the demurrer considering it as a special demurrer. If the replication be bad, the demurrer refers us back to the plea, and we must consider the case as if the plaintiffs had demurred to the plea. Then the question is, whether the plea be a good bar to the recovery of the plaintiffs on the note. I think the unreserved judgment of the supreme court, against the parties who are now plaintiffs before is, is conclusive evidence against them. It is unnecessary that I should say more, to explain my views of the law question which, in my opinion, is presented for our decision in this case. I have not overlooked the pretensions of the plaintiffs in error. They aver, in substance, that they were incorporated; that in virtue of that incorporation, they had a right to do, in a politic character, whatever a person in his natural or individual capacity had a right to do; and so, if a corporation be created with prescribed powers, ever so definite or limited, it has a right to do every thing not specifically prohibited by law. Nay, the plaintiffs carry their ideas or corporate immunities further, and contend, that although all persons may be forbid to do an act, yet they, as a corporation, or political person, are not included in the inhibition. They contend that they had a right to *do, as a person engendered of the law, every thing which the law did not prohibit its own offspring, by name, from doing. That so, though incorporated as an insurance company, they have a right to bank or to establish a manufactory, to become pawn-brokers, to do the business of a lottery office, to sell spirituous liquors without license, because the acts which prohibit all persons from doing these things, unless

ALBANY,
Dec. 1826.

Utica Ins. Co.
v.
Scott.

Replication sets up no new matter; and is bad on special demurrer.

On demurrer, he who commits the first fault in pleading must have judgment against him.

The plea is good.

[*726]

they are licensed, does not apply to the plaintiffs, the pro hibitions not extending to corporations, unless they are specially named. They contend further, that though banking powers may not be incident to their mere corporate capacity, yet that the authority given to them by their charter, to invest their surplus capital, permits them to discount notes; for that the investment of capital, and discounting of notes, are in fact the same thing.

The plaintiffs have urged, with seeming confidence, that we ought to suppose that though the legislature, whenever it has expressly created a bank, has thought it necessary to provide many cautions, severe restrictions and heavy responsibilities, yet that when they gave the plaintiffs a charter, as an insurance company, it was intended to confer on them a right to bank, without any provision as to their banking capital, any obligation as to the proportion of their funds which should be applied to the ostensible objects of their charter, any restraint upon the amount of bills they might issue, or any precaution whatever as to their banking operations. They contend that this very liberal construction ought to be given to their act of incorporation, because, in its preamble, it is said that the objects of an insurance company are laudable, and should be liberally encouraged. The plaintiffs suppose that the indemnity from personal responsibility for their debts and losses; the advantages of transacting their business of insurance as a corporation, and of putting their surplus funds at interest by ordinary investments, according to the common acceptation of that term, was not the liberal encouragement which the legislature intended to grant; but that we must suppose that the liberal encouragement in contemplation was a privilege, in a great measure unrestricted *to carry on banking operations. Whether the plaintiffs in error were or were not entitled to this privilege, I say, in the language of the judge in the case of *Rex* v. *Hearle*, I am not to consider, since in fact they have been barred of that privilege by the judgment on the *quo warranto;* and will continue to be so, until that judgment be reversed by writ of error.

[*727]

I am of opinion that that judgment of the supreme court should be affirmed.

BURROWS, BURT ELLSWORTH, HAGER, LAKE and Mc-CALL, Senators, concurred.

ALLEN, CRARY, EARLL, GARDINER, HAIGHT, HART, KEYES, LIVINGSTON, MALLORY, McINTYRE, OGDEN, SMITH, STEBBINS, VIELE, WILKESON, WOOSTER and WRIGHT, Senators, concurred with SPENCER, Senator, and JONES, Chancellor, that there should be judgment of reversal.

A majority being for reversal, it was ordered,

That the judgment below be reversed, that judgment be rendered for the plaintiffs, on the demurrer, that the plaintiffs recover their costs in error to be taxed, and that the record be remitted, &c. to the end, &c.