The New York State Loan and Trust Company, Appel-lant, *v.* Joseph W. Helmer, Impleaded, etc., Respondent.

By plaintiff's charter (chap. 685, Laws of 1870), it is authorized "to grant, bargain, sell, buy or receive all kinds of property, * * * or to hold the same in trust, or otherwise, * * * and to advance moneys, securities and credits upon any property." In an action upon two promissory notes made by defendants, their answer alleged in substance that plaintiff carried on a regular banking business, keeping an office for discounts and deposits; that the notes in question were discounted by it in the course of such business, and the proceeds credited upon its books to one of the defendants. *Held,* that said pro-vision of its charter did not confer upon plaintiff banking powers, or authorize it to discount commercial paper; and, this being prohibited by statute to any corporation not expressly incorporated for banking purposes (1 R. S., 600, § 4; see also id., 712, §§ 3, 5) that the notes were void; and that the answer set up a good defense.

One of the answers also alleged an agreement between the parties for a valuable consideration made at the time the notes were discounted, for the extension of the time of payment for six months, by giving renewal notes for those in suit, that at the maturity of the notes, defendants ten-dered new notes as agreed, which plaintiff refused to accept. *Held,* that this count in the answer set up a good defense.

*People* v. *Brewster* (4 Wend., 498); *Palmer* v. *Lawrence* (3 Sandf. S. C. R., 161); *State of Indiana* v. *Woram* (6 Hill, 37); *Steam Navigation Co.* v. *Weed* (17 Barb., 378), distinguished.

(Argued March 27, 1879; decided April 15, 1879.)

Appeal from judgment of the General Term of the Supreme Court, in the first judicial department, in favor of defendant Helmer, entered upon order reversing a judgment in favor of plaintiff, which was entered upon an order sustaining a demurrer to plaintiff's complaint. The said order of Gen-eral Term overruled the demurrer and directed judgment thereon for said defendant. (Reported below, 12 Hun, 35.)

The substance of the pleadings is set forth in the opinion.

*William Allen Butler,* for appellant. The act of plaintiff, although not expressly authorized to carry on the business of banking, in advancing the money on the notes in suit, does

not preclude it from recovering. (*Utica Ins. Co.* v. *Scott*, 8 Cow., 709; *People* v. *Brewster*, 4 Wend., 475; *Palmer* v. *Lawrence*, 3 Sandf. Ch.,, 170; *Chester Glass Co.* v. *Dewey*, 15 Mass., 102; *Moss* v. *Rossie Lead M. Co.*, 5 Hill, 137; *Steam Nav. Co.* v. *Weed*, 17 Barb., 378; *Firemen's Ins. Co.* v. *Ely*, 2 Cow., 678; *N. Y. L. Ins. and T. Co.* v. *Beebe*, 7 N. Y., 364; *Seneca Co. Bk.* v. *Lamb*, 26 Barb., 595; *Barton* v. *Port Jackson R. R. Co.*, 17 id., 397; *De Witt* v. *Brisbane*, 16 N. Y., 508.) The fact that the action was on the notes, and not for money advanced, did not aid the defense. (*Utica Ins. Co.* v. *Kipp*, 8 Cow., 20; *Utica Ins. Co.* v. *Caldwell*, 3 Wend., 296; *Utica Ins. Co.* v. *Kipp*, id., 369; *Utica Ins. Co.* v. *Bloodgood*, 4 id., 652; *Robinson* v. *Bland*, 2 Burr., 1077; *Cundy* v. *Marriott*, 1 B. & Ad., 696; *Wilson* v. *Vysar*, 4 Taunt., 288.) The permissive words in plaintiff's charter entitled it to take the notes in suit. (2 Laws 1870, chap. 686, p. 1620.)

*G. W. Bowen*, for respondents. The discounting of the notes being a banking transaction was in excess of the powers conferred by plaintiff's charter, and expressly prohibited in law, and therefore the notes were void. (*Catlin* v. *Gunter*, 1 Kern., 368; *Am. L. I. and T. Co.* v. *Dobbin*, Sup. to H. & D., 251; 1 Hilt., 98; *City Bk. of Columbus* v. *Bruce*, 17 N. Y., 507, 515; 4 Stat. at Large, 127, 131; 1 id., 557; 2 R. S. [6th ed.], 391; *Perkins* v. *Savage*, 15 Wend., 412; *Utica Ins. Co.* v. *Scott*, 10 J. R., 1; *Talmage* v. *Pell*, 3 Seld., 328; *Leavitt* v. *Palmer*, 3 Comst., 19, 32, 33; *The People* v. *Utica Ins. Co.*, 15 J. R., 358; *Curtis et al.* v. *Leavitt*, 15 N. Y., 58; *N. Y. F. Ins. Co.* v. *Ely*, 2 Cow., 678; *Utica Ins. Co.* v. *Cadwell*, 3 Wend., 300, 369; *Bissell* v. *Mich. S. and N. I. R. Co.*, 22 N. Y., 259; *Beach* v. *Fulton Bk.*, 3 Wend., 582, 583; *In re John M. Jaycox and John A. Green*, Bankrupts in Circuit Court of U. S., N. Dist. of N. Y.; *Lucas et al.* v. *Govt. Nat. Bk. of Pottsville*, decided Oct. 11, 1875; N. Y. W'kly Dig., p. 499; Abbott's Digest, Law of Corporations, pp. 56, 57, etc.; *Utica Ins. Co.* v.

*Hunt & Brooks*, 1 Wend., 56; *De Groot* v. *Van Duzer*, 20 id., 390; *Am. L. I. and T. Co.* v. *Dobbin*, Sup. to Hill & Denio, 252; *Bk. of California* v. *Collins*, 7 Hun, 336; *Maine Bk.* v. *Butts*, 6 Mass., 49, 54.

Miller, J.   This action is brought on two promissory notes made by the defendants, payable to their order and indorsed by them, which, it is alleged, were transferred, before they became due, to the plaintiff.

The demurrer to the answers of the defendant Helmer is upon the ground of insufficiency, in not stating facts which constitute a cause of action.   The first answer alleges that the plaintiff was a corporation created by an act of the Legislature of this State, and that it had engaged in banking business in violation of the laws of the State ; that the notes in question were delivered to the plaintiff and discounted for the defendants by the plaintiff, while carrying on said business as a bank of discount and deposit. in violation of its charter ; and that the plaintiff had not the right, power or authority to take, receive, hold, own or have the said several notes, and each of them is null and void.   The second answer is of a similar character and presents the same question.   The third answer alleges an agreement between the parties for a valuable consideration made at the time plaintiff received the notes for the extension of the time of payment of the notes after they became due, for six months next following, by the giving of new notes in renewal of the notes upon which this action is brought.   That defendants tendered the new notes as agreed at the maturity of the notes in suit, which plaintiff refused to accept.   The first and second answers and the demurrer present the question whether the plaintiff can discount notes made for that purpose, and received from the original parties before they have passed into other hands, and pay over the avails thereof to such parties.   The right to discount such notes is claimed to exist under the third section of the plaintiff's charter ; (vol. 2, S. L. of 1870, 1621) ; by which it is declared that the

company " shall have power to grant, bargain, sell, buy or receive all kinds of property, real, personal or mixed, or to hold the same in trust or otherwise ; "   *   *   *   " to receive upon storage, deposit or otherwise, merchandise, bullion, specie, plate, bonds, promissory notes, " etc. ;   *   *   * "and to advance moneys, securities and credits upon any property, real or personal," etc.   It is insisted that these notes in suit were personal property which the plaintiff had a right to buy, receive and hold, or to advance money upon ; but we think that the transaction did not constitute a purchase, within the meaning of the statute, and that the language employed therein was intended to embrace actual sales of such property, instead of a loan, or discount of notes, in the usual and ordinary form of discounting commercial paper of this description.   The plaintiff did not buy or receive the notes to hold the same in trust, but took the same in consideration of the discount paid thereon.   Nor were the notes received upon storage or deposit, within the meaning of the act.   Nor were advances made upon them, except by way of discounting the same.   The statute does not mean any such advance of money upon a promissory note, made for the express purpose of raising money by a loan at a banking institution.   The words " or otherwise " were not intended to confer banking powers upon the plaintiff, but to embrace a holding of the property differently, or otherwise than as a trust.   They might be held to apply to the payment of some expense incurred for the depositor by the corporation in the management of property, as, for instance, the improvement of real estate ; and it would be giving a wide and extended interpretation to such language, to hold that they impliedly conferred banking powers upon the corporation.   While the words contained in this provision may confer authority to buy personal property, and even include the purchase of promissory notes of third parties, it would be going very far to say that they covered a loan of money obtained upon a promissory note by a discount of the same to the maker or holder.   It is not necessary in this case to deter-

mine whether the notes were property, in the sense used by the statute, and quite enough that they were not received as such. But conceding that the interpretation of the statute claimed by the plaintiff is correct, and that it embraces all the powers which are claimed, the demurrer cannot be upheld, for the reason that it does not appear from the answers, which must be taken as true in every respect, that the notes in question were bought, received or held, or that money was advanced upon the same, within the provision cited. The first and second answers in addition to the allegations already stated aver that the plaintiff kept a regular office for discount and deposit, carried on a regular banking business, discounted promissory notes and other commercial paper, bought and sold a large amount of exchange, received a large amount of deposits, and paid the same on the checks of depositors, and, in fact, did the ordinary business of a bank of discount and deposit. It is also alleged, in one of the answers, that the proceeds of the notes in question were credited upon the books of the plaintiff to the defendant, Bowen.

Upon the facts alleged, the question to be determined is whether the plaintiff possesses authority, under its charter, to discount notes, the same as any other banking institution, credit the proceeds, and pay out the same upon the checks of one of the parties ; and not whether the plaintiff can lawfully buy and receive promissory notes and advance moneys upon the same. There is a plain distinction between the two cases ; and having that distinction in view, it is quite apparent that the plaintiff exceeded its powers in discounting the notes in question, and violated the provisions of its charter and the laws of this State passed to restrain illegal banking.

The plaintiff only possessed such powers and franchises as were especially conferred by its acts of incorporation ; and these must yield and be subject to the general provisions of the Revised Statutes, as is expressly provided by section nine of the plaintiff's charter. The discounting of the notes by

the plaintiff was an exercise of power which is expressly prohibited by law.  The Revised Statutes (vol. 1, [Edm. ed.], 559, § 4) declares that no corporation "not expressly incorporated for banking purposes shall, by any implication or construction, be deemed to possess the power to discount bills, notes," etc.  As the plaintiff was not authorized to conduct the business of banking by its act of incorporation, this provision was a restriction upon its charter, and the discount of the notes in question was contrary to law.  Such discount of the notes is also in conflict with other provisions of law against unauthorized banking.  By section 3, (1 R. S. [Edm. ed.], 661,) it is declared : "No incorporated company, without being authorized by law, shall employ any part of its effects, or be in any way interested in any fund that shall be employed for the purpose of receiving deposits, making discounts or issuing notes, or other evidences of debt to be loaned or put into circulation as money."  By section 5 : "All notes and other securities for the payment of any money, or the delivery of any property, made or given to any such association, institution or company, that shall be formed for the purpose expressed in the first section of this title, or made or given to secure the payment of any money loaned or discounted by any incorporated company, or its officers, contrary to the provisions of the third section of this title, shall be void."  These enactments are certainly very explicit, and in connection with others, some of which provide for the infliction of penalties for a violation of different provisions of the act, indicate quite clearly a settled policy of the Legislature to prevent corporations which are not formed for banking business from carrying on or in any way interfering with the same.  The Legislature having thus aimed to restrain illegitimate and improper banking, the courts are bound to carry out the law and to see that it is not violated. And such has been the uniform course of decision when questions have arisen involving the construction to be placed upon statutory provisions relating to the subject of banking: (*Utica Ins. Co.* v. *Scott*, 19 J. R., 1; *The People* v. *Utica*

*Ins. Co.*, 15 id., 358; *N. Y. Firemen Ins. Co.* v. *Ely*, 2 Cow., 678; *N. Y. L. Ins. Co.* v. *Beebe*, 3 Seld., 364; *Talmage* v. *Pell*, id., 328; *Utica Ins. Co.* v. *Kip*, 8 Cow., 20; *Oneida Bank* v. *Ontario Bank*, 21 N. Y., 490.)

The learned counsel for the appellant claims that the fact that a corporation, not expressly authorized to carry on the business of banking, advances money to a borrower and takes his promissory note in exchange for the advance, does not of itself preclude the lender from recovering the money loaned, and cases are cited to uphold this position. There is, I think, a palpable distinction in each of the decisions in this State from the case now considered, as will be seen by an examination of the same. In *The Utica Insurance Company* v. *Scott* (8 Cow., 709), the action was upon a promissory note, and the defendant pleaded that the plaintiff had discounted the note contrary to the statute. The plaintiff replied that they only lent a part of their surplus fund on the note. On demurrer to the reply, it was held that the company might lend their surplus fund on bond, note or mortgage. It will be observed that the case differs essentially from one where the plaintiff conducts the business of banking by discounting paper in direct conflict with the law. In *The People* v. *Brewster* (4 Wend., 498), the action was for a penalty for an alleged violation of the act prohibiting the carrying on of banking business by individual and incorporated companies, unless specially authorized by law; and the court held that the evil to be suppressed was the keeping of an office of deposit, for the purpose of carrying on any kind of banking business. The allegation in the defendant's answer here is that the plaintiff kept a regular office for discounts and deposits; and hence, the case last cited is not in point. In *Palmer* v. *Lawrence* (3 Sandf. [S. C. R.], 161, the action was to foreclose a mortgage executed to secure a subscription to the stock of the company by the purchaser of an original associate. It was held to be valid, and that the defendant could not impeach the certificate or deny the legal existence of the company

or the validity of the shares. The remarks in the opinion as to the right of a debtor who has contracted with a corporation *de facto* to dispute its organization, can have no application, I think, to a case where the illegal act of the corporation is a ground of defence, and not the illegality of its organization. In *The State of Indiana* v. *Woram*, (6 Hill, 37,) the question presented related to the purchase of certain bonds by a corporation which had no power by its charter to purchase or deal in the bonds; and it was held that the corporation could not avoid its obligation on the ground that it was given for property which it was not authorized to purchase. There is a distinction recognized, in some of the reported cases, between enforcing an illegal contract against a corporation and refusing to enforce such a contract in favor of the corporation. In *The Steam Navigation Co.* v. *Weed*, (17 Barb., 378,) an action was brought by a foreign corporation to recover a sum of money loaned for a single day, to relieve immediate necessities, without taking any note or security, and without intending to charge for its use; and it was held that where it is a simple question of capacity to contract, a party who has had the benefit of the contract cannot be permitted in an action founded upon it, to question its validity. It was claimed that it was a violation of the restraining act, and great stress is laid in the opinion that it was not a discounting of a note or an act of banking, but a single isolated transaction, not for purposes of gain, but to oblige a customer. It was also said that it was not a question of illegality, but of authority. The case differs materially from one where the act done is in violation of the charter of the corporation, and is in direct conflict with legal enactments. None of these cases, I think, affect the question which arises upon this appeal; and if any of them can be regarded as adverse to the views expressed, they are overborne by the adjudications already cited, which uphold a contrary doctrine. That the notes were discounted without any authority of law, and in the very teeth of the statutes, cannot be denied; and the facts, as presented by the answers, do not

bring the case within that class of decisions where the party, having received the benefit of a contract, is not allowed to repudiate it because the other party *had no power to make it.* Such cases rests upon the principle that the contract was an innocent or lawful one, and, in this respect, differ from a case where the act was illegal and expressly prohibited by law. Where there is fraud or illegality, the courts will not aid either party in enforcing the contract, or in setting it aside, or in recovering back what has passed between them. (*Nellis* v. *Clark,* 4 Hill, 424.)

It is not necessary to consider whether the plaintiff has a right of action to recover back the money loaned ; and it is sufficient to say, that as the action is brought upon the notes, it must be disposed of without regard to any other contract.

As to the third answer, we are inclined to concur with the opinion of the General Term, that it was sufficient, for the reasons there given.

The discussion had leads to the affirmance of the order of the General Term and of the judgment entered thereon.

All concur.

Judgment affirmed.