Louis L. Friedman, J.
Plaintiff sues to recover the balance due on a promissory note executed by one Stephen F. Massano *851 to the order of the defendant, and bearing the defendant’s indorsement thereupon. In addition to the balance due on the face amount of the note, plaintiff’s action demands attorney’s fees and collection expenses as therein provided.
Plaintiff is a finance company and its certificate of incorporation in evidence indicates that amongst the purposes for which it was formed was (1) “to buy, sell, pledge or otherwise deal in conditional sales contracts, chattel mortgages, bonds and mortgages against real property, notes or other evidences of indebtedness,” and (2) “to loan money against bonds and mortgages, conditional sales contracts, chattel mortgages, notes or other evidences of indebtedness.”
Defendant is an automobile dealer. Its usual practice in cases in which its customers purchase a car on a deferred payment plan, is to prepare a note, conditional sales contract or mortgage and other similar instruments upon forms furnished to it by a finance company similar to that of plaintiff, and then after completing the transaction with defendant’s customer, to turn said instruments over to the finance company in exchange for said finance company’s check in payment therefor. It may be well to state at this time and the court finds that the plaintiff is not the finance company with whom defendant made such arrangement, and the transaction hereinafter discussed was an isolated one between the parties hereto. It arose in this way:
Stephen F. Massano, in order to purchase an automobile from defendant, made inquiries of said defendant’s salesman with respect to a deferred payment plan. Having been advised that his purchase of the selected automobile would, after the down payment, leave a balance of $2,400, the said Stephen F. Massano (hereinafter referred to as Massano) told defendant’s salesman that he would like to finance the car through the plaintiff corporation. Thereupon defendant’s salesman telephoned to plaintiff corporation, advised them of this request on the part of the said Massano and was told to send Massano to plaintiff corporation’s office so that they might make the necessary arrangements directly with Massano. This was done. Pursuant to such appointment, Massano called at the offices of the plaintiff corporation, filled out a credit application which is in evidence and upon which plaintiff undertook to make an investigation as to his credit standing. The evidence shows clearly and the court finds as a fact that although the results of that investigation indicated that Massano’s credit was not of the best since he was then in arrears in one payment with another finance company, had several small judgments against him for unpaid items, and was in default in several other payments, the plain *852 tiff nevertheless decided to accept his credit, on the basis of their own previous experience with him some 6 or 7 years before. They notified Massano to that effect and also notified defendant’s salesman. Although there is a great deal of dispute in this case as to whether the culmination of this transaction was a direct loan from plaintiff to Massano, or as plaintiff contends, was merely the purchase by them of Massano’s negotiable instrument and chattel mortgage, the court finds as a fact and comes to the conclusion that the evidence points logically to only one reasonable conclusion, and that is that plaintiff made the loan directly to Massano even though, at his request, payment of the amount of said loan was made directly to defendant corporation. As further evidence of this, is the conceded fact that unlike the procedure in other similar transactions, plaintiff instead of defendant, prepared the closing papers which consisted of the note and the chattel mortgage, and prior to that time plaintiff itself had prepared the credit application. Plaintiff brought these documents to the dealer where they were signed by Massano and exchanged for the automobile, and where plaintiff left its check with the dealer in exchange for said documents with the dealer’s indorsement thereupon. This was not the purchase of a note and other documents as plaintiff contends but was a direct transaction between plaintiff and Massano. As a matter of fact, the evidence establishes that this was the only transaction where this finance company had any connection with any sale by defendant of a new car. Even the method of delivering the check to defendant was different in this transaction than it was in all of the other usual ones. Ordinarily, the seller (defendant in this case) prepares all of the forms and after they are signed by the purchaser of the automobile, forwards them to the finance company, after which a check is mailed by said finance company to said automobile dealer. Here, everything took place at the same time; the finance company sent its messenger to plaintiff’s place of business and released the check only when Massano had signed the papers and the papers were released to plaintiff.
Thereafter, when the first payment on said note became due, Massano failed to meet said payment and on the due date thereof, to wit, May 18,1956, plaintiff declared the entire balance due and payable. Although a payment of $105, which was slightly more than the monthly payment due on May 18, was received about 10 days later, plaintiff maintained the position that a default had occurred. It seems that in the meanwhile, the automobile in question had been involved in a serious accident and as it later developed, plaintiff received $400 from the *853 proceeds of a collision policy. Plaintiff also received $145 return premium when it cancelled said collision policy following the accident. Plaintiff concedes that credits on the said note amounted to a total of $650 representing the $105 payment, the $400 collision loss, and $145 return premium. Plaintiff claims that it is entitled to the face amount of the note, to wit, $3,718.44, plus $557.66 which represents 15% attorney’s fees as provided for in the said note, less the said $650 above set forth, or a net balance of $3,626.20, plus 6% interest from May 18, 1956.
The complaint sets forth the usual cause of action against the indorser of a promissory note. The answer of the defendant together with its concession on the trial, admits the execution and delivery of the said note but denies the allegations as to nonpayment and the amount due thereupon, and sets up three affirmative defenses. The first of these defenses alleges a direct loan from plaintiff -to Massano and contends that such loan is in violation of section 131 of the Banking Law and section 18 of the General Corporation Law, that the note is therefore void ab initio. The second affirmative defense alleges certain credits due upon said note which were not set forth in the complaint, while the third affirmative defense prays for a stay of the trial until a separate action for reformation of the note, brought by defendant, has been disposed of.
Since the defendant answered ready ’ ’ when this case was called for trial and made no objection to the trial thereof, the third defense must fall. As to the second affirmative defense, the court has already discussed the amount of credit which ooncededly should be given on this note, to wit, the total sum of $650. Although there is a dispute between the parties as to whether defendant is entitled to additional credit by reason of unearned interest, the court finds it unnecessary, in view of the determination hereinafter made to pass upon said question.
One other contention now raised by defendant is that the transaction was a usurious one. Subsequent to the close of the trial, by letter written to the court and thereafter by notice of motion, defendant sought to interpose an affirmative defense of usury, but such defense is not considered, and the motion made following the close of the trial is in all respects denied with exception to the defendant. Although the' rate of interest charged by this plaintiff is fantastic as will be pointed out herein, it seems to be customary in transactions of this kind. In any event, since the court has come to the conclusion that the loan transaction was directly between the plaintiff and Massano, the defense of usury, if such usury existed, would be *854 available only to said Massano. A defense of usury in any event may not be raised by a corporation and it is therefore unnecessary for the court to pass upon that phase of the case.
Although not necessary to the determination of the issue before the court, the facts with respect to the loan transaction and the amount of interest charged are rather interesting. The plaintiff’s testimony shows that using the basic amount of the loan, to wit $2,400, and adding thereto the additional money needed by Massano for collision insurance in the amount of $191 and for fire and theft insurance in the amount of $27, interest upon said total loan of $2,618 was the sum of $1,100.44. When asked to explain this unusually large amount, plaintiff’s officer stated that interest upon the loan of $2,618 was computed at 14%% per annum for three years or a total of 43%% and then the entire amount of such interest was added to the amount advanced. Although the amount of interest per annum was computed at 14%%, actually the rate as distinguished from the amount, at which said loan was made was a descending rate starting with 522%. This arises by reason of the fact that this loan was to be paid in monthly installments, and even though at the end of the first month the first installment of $103 and some odd cents was already repaid, Massano had agreed to pay interest on that first monthly payment for the full three-year period. To illustrate simply, if a person borrows $100, and agrees to pay 6% per annum thereupon, his interest rate is 6% per annum. If, however, the same 6% charge is made for the use of the money for one month, then although the amount of interest is only 6%, the annual rate at which interest has been charged is 12 times 6% or 72%. Thus, applying this illustration to the facts in the present case, while the amount of interest which Massano agreed to pay upon the money borrowed by him was 43%%, actually the annual rate at which he was being charged for that first payment was 12 times 43%% or 522%. If Massano had made his second payment, the interest thereupon, although paid by him in the amount of 43%%, would have been at the rate of 478%% per annum, and as he would make his future monthly payments, the interest rate diminished monthly during the first year at the rate of 43%% a month. During the second year a similar computation of rate would follow but based only on two years’ interest of 14%% per annum or 29%. In other words, the first payment made during the second year would be at the rate of 12 times 29% and would diminish during the second year at the rate of 29% per month. At all times, it must be borne in mind that there is a distinction between amount of interest and rate of interest. Certainly this *855 is a most fantastic amount of interest, and it is questionable whether the law permits transactions of this kind. Nevertheless, as has been heretofore stated, it has been unnecessary to pass upon this question of interest or the proposed defense of usury.
This leaves for determination only the question of whether the note is void ab initio as having been executed and received by plaintiff in violation of section 131 of the Banking Law and section 18 of the General Corporation Law.
Turning now to that final question remaining for determination, the court finds that this note was void ab initio in that the transaction was an agreement of discount prohibited and proscribed by section 131 of the Banking Law, since the plaintiff corporation is not one which falls within the exception provided by section 18 of the General Corporation Law. Section 131 of the Banking Law provides that all notes shall be void if given ‘ to secure the payment of any money loaned or discounted ’ ’ unless the corporation receiving said note be one organized under the Banking Law. Section 131 was “ said to have been enacted to prevent the dangers of banking inflation (Meserole Securities Co. v. Cosman, 253 N. Y. 130, 145), and to be * a settled policy of the Legislature to prevent corporations which are not formed for banking business from carrying on or in any way interfering with the same ’ (New York State Loan & Trust Co. v. Helmer, 77 N. Y. 64, 69).” (Miller v. Discount Factors, 1 N Y 2d 275, 279.)
In and of itself the loan and discount transaction involved would have been illegal and the note unenforcible despite the fact that the transaction was an isolated one. The discount of notes by a corporation other than a banking corporation is specifically proscribed (Miller v. Discount Factors, supra). However, section 18 of the General Corporation Law has an exception to the provisions prohibiting a corporation other than a banking corporation from carrying on the business of discounting notes or engaging in other forms of banking, and provides that such a corporation may engage “ in the business of loaning money in this state * * * secured by deeds of trust or mortgages upon real property or personal property situated in, upon or appurtenant thereto ” (emphasis supplied). The chattel mortgage or conditional bill of sale executed herein did not embrace personal property situated in, upon or appurtenant to real property, but rather on an automobile, the subject of the sale. The Legislature, in enacting section 18 of the General Corporation Law in 1935 (L. 1935, ch. 905), was specific in prescribing that such a transaction was proper provided the *856 note or loan was secured by a mortgage upon real property or. personal property situated in, upon or appurtenant thereto, i.e., real property.
The courts are bound, in interpreting the statute, to construe it in accordance with the sense of its terms and the intention of the framers of the law. However, that intention is first to be sought from the words employed and if the language is unambiguous, plain and clear, conveying a distinct idea, there is no occasion to resort to other means of interpretation or go elsewhere in search of conjecture in order to restrict or extend the meaning (Town of Putnam Val. v. Slutzky, 283 N. Y. 334; New Amsterdam Cas. Co. v. Stecker, 3 N Y 2d 1). The court is of the firm opinion that the statute in question is clear and unequivocal, limiting the type of personalty to be mortgaged, and prevents any other interpretation.
Although there may be occasions when personal property not physically attached to real property may be deemed to be appurtenant to said real property, this cannot be so with respect to an automobile. For instance, a farm tractor might be considered as personal property appurtenant to the use of the farm; so may a hose, awning, Venetian blinds and like objects of personalty. In and by themselves, such items of personal property are useless and it is only when used in connection with or appurtenant to real property that they have any value. But an automobile is a different kind of personal property. It may be used anywhere in the world; as a matter of fact its sole function is to transport people from one place to another. Even by the wildest stretch of imagination, it may not be said that an automobile is such personal property as was within the contemplation of the Legislature when they set forth the exception in section 18 of the General Corporation Law previously referred to.
Plaintiff argues extensively that if the note so taken by it is secured by a chattel mortgage simultaneously executed and delivered, that the note is perfectly valid and enforcible regardless of any discount involved, but the court finds that the cases cited by plaintiff are not determinative of the factual issue here presented and that those cases may be readily distinguished upon their particular facts. Plaintiff cites Antipyron Co. v. Breiter & Co. (8 Misc. 2d 310, affd. 4 A D 2d 941); Amherst Factors v. Kochenburger (4 N Y 2d 203); New York Credit Men’s Adj. Bur. v. Breiter Co. (253 F. 2d 675.)
In the Amherst case, the court refused to pass upon the legality or illegality of the notes, as the action was brought to foreclose a real estate mortgage which was given as security. *857 In the Antipyros case, an examination of the record on appeal reveals that the chattel mortgage given as security embraced and covered fixtures and machinery situated in, upon and appurtenant to real property so as to fall within the exception of section 18 of the General Corporation Law.
In the Stanton case, the personal property involved was equipment to be used in the building in which it was located. It was personal property appurtenant to the building in which it was located and although it undoubtedly could have been moved to other real property, it had to be used in connection with or appurtenant to some place of realty. The court there held that the notes in that case came within the exception of section 18.
Since it appears that the mortgage in the instant case does not come within the exception of section 18, the court holds that the discount of the note herein was a banking transaction and under such circumstances, the rule enunciated by the Court of Appeals in the case of Miller v. Discount Factors (supra) is applicable, and the note must be held illegal and void.
Although the Legislature of this State has recently amended the sections here involved (L. 1958, chs. 990, 991), such amendment is not retroactive but prospective. The chapters referred to provide that the acts shall take effect immediately, and it may not be said that the plaintiff is entitled to the benefit of such statutes.
Accordingly, as heretofore stated, the motion made by the defendant to amend its pleadings to conform to the proof is denied even though the court would have been justified in granting such amendment since the evidence with respect thereto was received without objection (Audley v. Townsend, 126 App. Div. 431; Merchants Exch. Nat. Bank v. Commercial Warehouse Co., 49 N. Y. 635; Frank v. Hasing Realty Corp., 234 App. Div. 712), and even though it is undisputed that the rate of interest charged is clearly exorbitant and beyond that permitted by statute (General Business Law, § 370).
The court finds that the note sued upon herein was void and illegal when made, as it was in violation of section 131 of the Banking Law and section 18 of the General Corporation Law. Judgment is rendered in favor of defendant dismissing the complaint. Exception to the plaintiff. Thirty days’ stay and 60 days to make a ease is granted to the plaintiff. Counsel will please call at the office of the clerk for their exhibits in exchange for their receipt therefor.