DANIEL PRATT et al., Assignees, etc., Appellants, *v.* HENRY
W. SHORT et al., Respondents.

79  437
151   37
79  437
156  560
79  437
162  310

Under its charter (chap. 816, Laws of 1868) the People's Safe Deposit and
Savings Institution had power to loan its capital and funds, but was
restricted in its investments to such securities as are specified in its
charter (§ 11); this did not include commercial paper.

Accordingly *held*, that as the discounting of commercial paper is prohibited
by statute (1 R. S., 712, §§ 3, 6), to any corporation not authorized by
law so to do, and as paper so discounted is declared void, that a prom-
issory note discounted by said corporation was void.

But, *held*, that the illegal action of its directors in thus investing its funds
did not work a forfeiture of the money loaned, and that this might be
recovered, although the security was void.

The history of the restraining acts given, and the authorities on the sub-
ject collated.

Where a prohibitory statute points out the consequences of its violation,
and it appears to have been the legislative intent to exclude any other
penalty or forfeiture than such as is declared in the statute, no other
will be enforced; and an action may be maintained upon the transac-
tion, of which the prohibited act was a part, if it can be done without
sanctioning the illegality.

(Argued December 12, 1879; decided January 13, 1880.)

APPEAL from judgment of the General Term of the Supreme
Court, in the fourth judicial department, in favor of defend-
ants, entered upon an order reversing a judgment in favor
of plaintiffs, entered upon the report of a referee, and direct-
ing final judgment for defendants.

The nature of the action and the facts are set forth suffi-
ciently in the opinion.

*Daniel Pratt*, for appellants. The fact that the institution
is made subject to other provisions of the statutes, shows
that it was not designed that it should be subject to the
restraining act. (Brooms' Legal Maxs., 592, 595; Dwarris
on Statutes, 605; *People* v. *Utica Ins. Co.*, 15 J. R., 383;
*Crocker* v. *Whitney*, 71 N. Y., 167; *Gregory* v. *Des Anges*,
3 Bing. [N. C.], 85–87; *Reg* v. *Caledonia R. Co.*, 16 Ad. &

El., 31; *Weekler* v. *First Nat. Bank,* 42 Md., 393; *Whitney* v. *First Nat. Bank of Brattleboro,* 50 Ves., 398; *Fowler* v. *Scully,* 72 Penn. St., 461.) The note in suit was valid. (*Utica Ins. Co.* v. *Scott,* 8 Cow., 709; *Utica Ins. Co.* v. *Pardow,* 2 Hall, 515; *People* v. *Utica Ins. Co.,* 15 J. R., 358–392.) Where it is a simple question of authority in the corporation to make the contract in question, a party having had the benefit of the contract cannot be permitted to question its validity. (*Whitney Iron Co.* v. *Barlow,* 63 N. Y., 62–70; *Parish* v. *Wheeler,* 22 id., 494–508; *Palmer* v. *Lawrence,* 3 Sand. [Supreme], 161; *Silver Lake Bank* v. *North,* 4 Johns. Ch., 370; Albany Law Jour. [Jan. 1, 1878], 426; *State of Md.* v. *Worman,* 6 Hill, 37; *Carey* v. *Cleveland and Toledo R. R. Co.,* 29 Barb., 35–52; 13 Gray, 124; Brice on Ultra Vires, 373–375.) The bank held the relation to its depositors substantially as trustee, and its unauthorized acts should be treated as the unauthorized acts of trustees of individuals. (*U. S. Trust Co.* v. *Brady,* 20 Barb., 119–121; *Mott* v. *U. S. Trust Co.,* 19 id., 558–571; *Butts* v. *Wood,* 37 N. Y., 317; *Coleman* v. *Second Avenue R. R.,* 38 id., 301; *Great Eastern R. R. Co.* v. *Turner,* 21 W. Rep., 163; Same, Chancery App. [8 Law R.], 149; *Olivers Lees' Bank* v. *Walbridge,* 1 Clinton Dig., 349, par. 209.) As a general rule, when a contract is not expressly declared to be void, the law must be examined as a whole to ascertain whether or not its makers intend that a contract contravening it in some particulars should be held void. (*Harris Langley,* 12 How., 79; *U. S. Trust Co.* v. *Brady,* 20 Barb., 119–121; *Sacketts Harbor Bk.* v. *Codd,* 15 N. Y., 249.) The statutes requiring certain things to be done are generally directory merely. (*City Bank of Columbus* v. *Bruce & Fay,* 17 N. Y., 507–515.) Conceding that the instrument itself is void, as being prohibited by the statute, the defendants are still liable on the discount for money lent. (*Parker* v. *Rochester,* 4 Johns. Chy. R., 332; *Utica Ins. Co.* v. *Bloodgood,* 4 Wend., 652; *Utica Ins. Co.* v. *Caldwell,* 3 id., 290; *Utica Ins. Co.* v. *Kipp,* 8 Cow., 20; *Utica Ins. Co.* v. *Scott,*

19 J. R., 1; *Utica Ins. Co.* v. *Kipp*, 3 Wend., 369; *Utica Ins. Co.* v. *Hunt*, 1 id., 56 ; *Parker* v. *Rochester*, Sup.; *Buffalo City Bank* v. *Cadd*, 25 N. Y., 163–169; 7 Wend., 31; Parsons Con., 380; 14 N. Y., 189; 2 Burr., 1080; 2 Strange, 1140–1155; *Oneida Bank* v. *Ontario Bank*, 21 N. Y., 490; 2 Parsons Con., 263; 22 Rich., 181.) The restrictions thrown around loans were for the benefit of the creditors and depositors, and loans made and property transferred in violation of these restrictions, is a fraud upon them and void. (*Nathan* v. *Whittoch*, 9 Paige, 151; 1 R. S. [6th ed.] ; *Gillett* v. *Moody*, 3 Comst., 479; *Wilson* v. *Forsyth*, 24 Barb., 105; *Leavitt* v. *Tylee*, 1 Sand. Chy., 207; *Bank of America* v. *Polloch*, 4 Ed. R. Chy., 215; *Gillett* v. *Phillips*, 3 Kern., 114; *Tuckerman* v. *Brown*, 33 N. Y., 297; *Steam Nav. Co.* v. *Weeld*, 17 Barb., 380; *McCollough* v. *Moss*, 5 Den., 567; *Haxture* v. *Bishop*, 3 Wend., 3; *First Nat. Bk. of Lyons* v. *Ocean, etc., Bank*, 60 N. Y., 278; 8 Law R. Chy., 149; *Great Eastern R. R. Co.* v. *Turner*, 21 W. R., 163; *Talmage* v. *Pell*, 3 Seld., 328; 2 R. S., 463, § 33 [m. p.] ; Act, 1858, chap. 314; *Osgood* v. *Layton*, 48 Barb., 464; affid., 3 Keyes, 521–523; *Southard* v. *Benson*, 72 N. Y., 424.)

*Geo. N. Kennedy*, for respondents. Defendants were not liable as indorsers, as the note not having been discounted by the institution was by the restraining act void in its hands, and could not be enforced. (1 Edmonds Stats., 557, § 4; 2 R. S. [5th ed.], 981, §§ 3, 4, 5, 8, 11, 18.) The defendants were not liable to said institution as for money had and received, or lent and advanced by it to them for the money paid upon the discount of said note. (*Utica Ins. Co.* v. *Scott*, 19 J. R. 1; *Utica Ins. Co.* v. *Caldwell*, 3 Wend., 296; *Utica Ins. Co.* v. *Bloodgood*, 4 id., 652; *Utica Ins. Co.* v. *Kipp*, 8 Cow., 20; *New Hope Del. Bdg. Co.* v. *Poughkeepsie Silk Co.*, 25 Wend., 650; *Curtis* v. *Leavitt*, 15 N. Y., 98; *Tracy* v. *Talmage*, 14 id., 189; *Life and Fire Ins. Co.* v. *Mechanics' Fire Ins. Co. of N. Y.*, 7 Wend., 31; *Bissell* v. *Mich. South. R.*

*R. Co.*, 22 N. Y., 265; Com. on Contracts, 30; *Bank of Salina* v. *Alvord*, 31 N. Y., 474; *N. Y Firemen Ins. Co.* v. *Ely*, 2 Cow., 678; 22 N. Y., 265.)

ANDREWS, J.  The People's Safe Deposit and Savings Institution, a corporation created by chapter 816 of the Laws of 1868, in August, 1872, upon the application of defendants, composing the firm of H. W. Short & Co., discounted a note made by one Alice Van Cleek, for $1,900, payable to the order of H. W. Short & Co. seventy days after its date, and indorsed by the payees, who received the proceeds of the discount.  The note was taken by H. W. Short & Co. upon a debt owing by the maker to the payees.  It was not paid at maturity, and was duly protested.  The Safe Deposit Company in September, 1872, became bankrupt, and the plaintiffs were appointed assignees in bankruptcy of the insolvent corporation.  This action is brought by the plaintiffs as such assignees against the defendants, and in their complaint they allege three causes of action : *first*, a cause of action against the defendants as indorsers of the note referred to ; *second*, for money lent and advanced by the Safe Deposit Company to the defendants upon the security of the note, and *third*, for money had and received by them, to and for the use of the corporation.

It is admitted that the note has not been paid, and that the Safe Deposit Company has never been re-imbursed in any way for the money advanced to the defendants on the discount of the paper.  When called upon to pay the note, according to the terms of their engagement, their sole defense is that the Safe Deposit Company was prohibited by law from discounting notes, or loaning its funds on personal security, and that having acquired title to the note through this illegal transaction the contract of indorsement is void. In answer to the claim for the repayment of the money it is insisted that the loan or advance of the money, and the taking of the note with the indorsement as security therefor, constituted one single and indivisible act, incapable of separa-

tion, and that the transaction as a whole falls under the con-
demnation of the law, so that neither the corporation nor its
assignees in bankruptcy, have a remedy either upon the
security, or to recover back the money advanced upon the
void paper.

The question as to the power of the Safe Deposit Company
to discount notes, depends upon its charter, and the limita-
tions and restrictions contained in the general statutes of the
state, applicable to this corporation.   By the first section of
the charter, the persons named, and such other persons as
should become stockholders, were constituted a body corpo-
rate, under the name and style of "People's Safe Deposit and
Savings Institution of the State of New York."   The eighth
section provides that the capital stock of the corporation
shall be $200,000, subject to be increased as therein provided.
The fifth section declares the business and general object
of the corporation to be, to take and receive on deposit as
bailee for safe keeping and storage, coin, bullion, etc., and
personal property, upon the terms and for such compensation
as may be agreed upon between the corporation and the
bailors, and authorizes the corporation " to receive money
from any estate, company, association, person or persons on
deposit, and give a receipt, certificate, or book therefor, to
the party or parties making such deposits, and which shall be
subject to their order only, and any rate of interest, not exceed-
ing that allowed by law, shall be paid for such deposits."
The sixth section provides that the corporation may make
such special regulations, in reference to deposits, as shall best
aid the depositors and parties interested by accumulating and
increasing the same, allowing and receiving such rate of
interest therefor not greater than the rate before mentioned,
as may be agreed upon, and empowers the corporation to
negotiate the stocks and bonds of the United States, or of
the several States, and the authorized bonds of municipali-
ties and corporations.   The seventh section authorizes the
corporation to purchase and hold such real and personal
estate as may be necessary and convenient for the accom-

modation and transaction of its business, and also " to take and hold any real estate as security for, and in payment of loans or debts due, and to become due to the corporation." The eleventh section provides for investments of the capital and funds of the corporation in the words following : " It shall be the duty of the board of directors to invest the capital stock of the said corporation, and to keep the same invested in good securities ; and it shall be lawful for the same to make such investments of its capital, and of the deposits and funds accumulated by its business, or any part thereof, in bonds and mortgages, on unincumbered real estate, worth at least fifty per cent more than the sum loaned thereon, and also in the public securities or stocks of any State, or of the United States, or in the stocks or bonds of any city, county, or town, or corporation, or association, *or otherwise,* of any State, or the United States, in manner or form as the directors and officers of said corporation think proper." The fourteenth section declares that the corporation shall possess the general powers and privileges, and be subject to the liabilities and restrictions contained in title third of chapter eighteen of the first part of the Revised Statutes, so far as applicable thereto.

It is clear from a reference to the provisions of the charter that the corporation was authorized to loan its capital and funds. This is clearly inferrible from the language of the seventh, and other sections, and without this power its business of receiving and paying interest upon deposits could not be carried on. But the mode of investment is prescribed in the eleventh section, and the specification of the particular securities in which it should be lawful for the corporation to invest, operates by implication to restrain and prohibit investments in any securities other than those particularly enumerated. This rule of construction has been frequently recognized and applied. In *New York Firemen Ins. Co.* v. *Ely* (2 Cow., 678), Sutherland, J., referring to the claim that the company in that case was not prohibited from investing its surplus funds in loans upon promissory notes, said : " The

sixteenth section of the act expressly provides that it shall be lawful for the corporation to invest their capital, or any portion of it either in the stock of the United States, or of the individual States, thus by the strongest implication prohibiting any other mode of investment, and destroying the inference which might have resulted from the absence of all regulations on the subject." (See also *People* v. *Utica Ins. Co.*, 15 J. R., 383; *North River Ins. Co.* v. *Lawrence*, 3 Wend., 482; *Crocker* v. *Whitney*, 71 N. Y., 161.) The specification in the eleventh section of the charter in question does not include investments by way of loan upon, or discount of notes or other commercial paper, made by individuals. The words " or otherwise " as used in the section if they have any intelligible meaning, can only be construed as authorizing an investment in the obligations of counties, cities, etc., other than the stocks or bonds mentioned in the preceding part of the section.

But the intention of the Legislature to prohibit the corporation from discounting or loaning money on the security of commercial paper is not left alone to the inference or implication from the language of the eleventh section of the charter. The fourteenth section incorporates with the act the provisions of the third title of chapter eighteen, of the first part of the Revised Statutes, so far as applicable. The fourth section of that title declares that " no corporation created, or to be created, and not expressly incorporated for banking purposes shall by any implication or construction be deemed to possess the power of discounting bills, notes, or other evidences of debt, of receiving deposits," etc.

The Safe Deposit Company was not expressly incorporated for banking purposes. The constitution of 1846 (art. 8, § 4) prohibited the Legislature from granting a special charter for banking purposes, and the charter in question while it conferred upon the corporation created thereby the power to receive deposits, which is a banking power, did not intend by the charter to create a banking corporation. The constitution referred to corporations possessing general banking

powers. The principal functions of such a corporation, to wit : the power to issue notes to circulate as money, and discounting commercial paper, were not conferred. The validity of the charter creating this corporation is not questioned, and the corporation not being one expressly incorporated for banking purposes, it had no power to discount notes or commercial paper, as appears by the express language of the section of the Revised Statutes alluded to. But the corporation was also subject to the provisions of the statute to restrain unauthorized banking, commonly known as the restraining act. This point is established by the decision of this court in *The New York State Loan and Trust Co.* v. *Helmer* (77 N. Y., 68), where the question was presented under a charter similar in respect to the point we are now considering, to the charter in question. The third section of the restraining act (1 R. S., 712), declares that " no incorporated company without being authorized by law, shall employ any part of its effects or be in any way interested in any fund that shall be employed for the purpose of receiving deposits, making discounts, or issuing notes, or other evidences of debt, to be loaned or put in circulation as money." The sixth section declares that all notes or other securities for the payment of money " made or given to secure the payment of any money loaned or discounted by any incorporated company, contrary to the provisions of the third section of this title, shall be void."

It appears from the evidence in the case that the corporation in question, at, and prior to the time of the discount of the note set out in the complaint, used its funds derived from deposits and otherwise, in discounting commercial paper, and exercised the usual and ordinary powers of a bank of discount. This course of business was expressly prohibited, by the restraining act, and independently of that act, was in violation of the restrictions imposed by the eleventh section of the charter of the company.

I have no difficulty therefore in reaching the conclusion that the discount by the corporation of the note in question, was unlawful, and upon general principles of law, applicable

to the subject as well as by the terms of the restraining act, the security taken by the company was void, and furnishes no ground of action. (*Thalimer* v. *Brinkerhoff*, 20 J. R., 386; *N. Y. Firemen's Ins. Co.* v. *Ely, supra; Bank of Salina* v. *Alvord*, 31 N. Y., 474; *Crocker* v. *Whitney*, 71 id., 161; *N. Y. State Loan and Trust Co.* v. *Helmer*, 77 id., *supra*.)

It is claimed, however, that the plaintiffs as representatives of the insolvent corporation notwithstanding the invalidity of the note, are entitled to recover the money received by the defendants upon the void security, and this presents the only remaining question in the case.

It is no doubt the general rule of law, that no right of action can spring out of an illegal contract. And the rule that an illegal contract cannot be enforced, applies as well to contracts *malum prohibitum*, as to contracts *malum in se*. But it does not necessarily follow that all the consequences attending a contract, which is contrary to public morals, or founded on an immoral consideration, attend and affect a contract *malum prohibitum* merely. The law in the former case will not undertake to relieve parties from the position in which they have placed themselves, or to adjust the equities between them. But in the latter case, while the law will not enforce the prohibited contract, it will take notice of the circumstances, and if justice and equity require a restoration of money or property, received by either party thereunder, it will, and in many cases has given relief. So also a prohibitory statute may itself point out the consequences of its violation, and if, on a consideration of the whole statute, it appears that the Legislature intended to define such consequences, and to exclude any other penalty or forfeiture than such as is declared in the statute itself, no other will be enforced, and if an action can be maintained on the transaction of which the prohibited transaction was a part, without sanctioning the illegality, such action will be entertained. The case of *Robinson* v. *Bland* (2 Burr., 1077), is a leading case, illustrating this principle. The statute

(9 Anne, chap. 14) declared that "all notes, bills, bonds judgments, mortgages or other securities for money won or *lent* at play, shall be void," etc. The declaration counted upon a bill of exchange drawn by the defendant's intestate, and also contained the money counts. The bill was given, in part, for money won at play by the plaintiff of the defendant's intestate, and in part for money lent at play to the intestate. The defendant interposed the statute as a bar to the recovery. The defense was allowed as to money won, but was overruled as to the money lent. Lord Mansfield said: "As to the money won, we think it cannot be recov ered; as to the money lent, the plaintiff is entitled to it." Mr. Justice Denison said: "There is a distinction between the contract and the security." Mr. Justice Wilmot, speaking of the claim for money lent, said: "The contract may be good, though the security be void; and I think the contract is good, though the security is void by the statute of 9 Anne."

In determining whether the Legislature intended, in the charter in question, that a violation by the company of the restriction as to investments, contained in the eleventh section, should not only render the unauthorized security void, but also work a forfeiture of the money loaned thereon, it is important to consider the purpose and object which the Legislature had in view in making the restriction. Plainly, the main object was to secure the fund of depositors against loss by insecure and hazardous investments. The State, by the charter, held out the company as a savings bank. The Legislature well understood that it would be made the custodian of the savings of individuals dealing with the corporation, and it was eminently wise and just that the bank should be so restricted in respect to the character of the investment it should make as to afford reasonable assurance that the trust would be safely administered. The risk of losing the benefit of securities taken in violation of the charter, would naturally induce care on the part of the managers of the corporation in confining investments to the

authorized securities, but to hold that the illegal action of the directors in investing in unauthorized securities, not only debarred a recovery thereon, but also put the fund itself thus illegally used, and which the restriction was intended to protect, beyond the power of reclamation from the hands of the borrower, would seem to contravene rathe.ᴀ than support the policy upon which the restriction was founded.

The effect of the restraining act upon contracts made in violation of its provisions, was considered in a series of cases, known as the Utica insurance cases, commencing with the case of *Utica Insurance Co.* v. *Scott* (19 J. R., 1). In these cases the company had, in violation of the restraining act, carried on the business of discounting paper, exercising in respect thereto ordinary banking power. And it was held that the securities taken on such discounts were void, but that the money loaned could be recovered. The court, in the case in Johnson, say : " the lending money is not declared to be void, and, therefore, whenever money has been lent it may be recovered, although the security itself is void," citing, among other authorities, the case of *Robinson* v. *Bland* (*supra*). This distinction was adopted and followed in several subsequent cases. (*Utica Ins. Co.* v. *Kip*, 8 Cow., 20; *Utica Ins. Co.* v. *Cadwell*, 3 Wend., 296, and *Utica Ins. Co.* v. *Bloodgood*, 4 id., 652.) These cases have been criticised, but have never been overruled. (*Mercein* v. *People*, 25 Wend., 64; *Tracy* v. *Talmage*, 14 N. Y., 189; *Curtis* v. *Leavitt*, 15 id., 97.) The first restraining act was passed in 1804, and was re-enacted in 1813 (2 R. L., 234), and extended in 1818. (Laws 1818, chap. 236.) The object of these enactments, as shown by SAVAGE, C. J., in *New York Firemen's Ins. Co.* v. *Ely* (*supra*). was to protect the chartered banks in the monopoly of banking, and to exclude other corporations, associations or individuals from conducting a banking business in either department, of issue, deposit or discount. But the State subsequently departed very widely from this policy. In 1837 the Legislature repealed the restriction before

existing, preventing individuals or unincorporated associations from keeping offices of deposit and discount. (Laws of 1837, chap. 20.) This act, as was said by COMSTOCK, J., in *Curtis* v. *Leavitt* (15 N. Y., 97), reduced banking to a private business, except in the department of creating a circulating medium. After this repeal any person or association except incorporated companies could conduct the business of receiving deposits and making discounts. In 1838 the Legislature, by the general banking law, opened the whole franchise of banking to any person or association of persons, subject only to the condition of complying with the provisions of the act.

It will be seen, from this reference to the law, that the policy upon which the restraining acts were passed, viz. : the securing of the monopoly of banking to special favorites of the Legislature, has been abandoned. Any individual, or association of individuals, may now conduct the business of receiving deposits and discounting commercial paper. The restraint continues as to incorporated companies not authorized by their charter to conduct the business. The only public policy upon which this remaining restriction upon incorporated companies against discounting paper seems now to rest, is that of restraining corporations from exercising powers not granted by their charters. The Utica insurance cases have stood as the law of the State for more than forty years. They gave a construction to the restraining laws which has never been reversed. The court is not called upon at this late day, in a case similar in principle, and involving the construction of the same statute, to reconsider the grounds of those decisions, especially when there remains but a remnant of the policy upon which they were founded, and when the business of discounting notes has been made lawful as to all the world except corporations not authorized by their charters to conduct it. In view of the special language of the restraining act, and the specification of the consequences which should follow the unlawful discount of commercial paper, there is great force in the sug-

gestion that the Legislature regarded the particular penalty imposed, and the remedy by *quo warranto* or by an action in equity to restrain the exercise by a corporation of unauthorized powers, as a sufficient protection against corporations, or individuals unlawfully engaging in the business of discounting paper, and that it was not intended that they should also forfeit all claim to money loaned or advanced upon the prohibited security.

The justice of the particular case before us calls for no departure from these decisions. If the defendants avoid their indorsement it is the plainest equity that they shall restore the money which they received on the faith of it.

The judgment of the General Term should be reversed, and the judgment of the Special Term affirmed, with costs.

All concur.

Judgment accordingly.