ELIZABETH WINEGARD, Respondent, *v.* BENJAMIN FANNING, Appellant.

*Mortgage foreclosure — action by the mortgagee (the assignor) in his own name, by agreement with the owner (the assignee) of the mortgage — in contravention of section 449 of the Code of Civil Procedure — the owner of the mortgage may recover the proceeds of the foreclosure from the mortgagee.*

If the owner (the assignee) of a bond and mortgage, by assignment from the mortgagee, delivers the same to the mortgagee as his agent to collect or foreclose, and at the same time makes an agreement with the mortgagee that the foreclosure action shall be conducted in the mortgagee's name, in violation of the provision of section 449 of the Code of Civil Procedure, that "Every action must be prosecuted in the name of the real party in interest," the illegality of such agreement does not, after the agreement has been executed, prevent the owner of the bond and mortgage from recovering from the mortgagee the proceeds of the bond and mortgage collected by him in such action.

The judgment in such action will not preclude the assignee, in an action brought by him against the mortgagee, from recovering the proceeds of the foreclosure, although it would estop him as to the defendants in the foreclosure action.

APPEAL by the defendant, Benjamin Fanning, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of Schoharie county on the 24th day of January, 1893, upon a verdict rendered at the Schoharie Circuit, and from an order denying the defendant's motion for a new trial made upon the minutes.

*L. W. Baxter*, for the appellant.

*John B. Holmes*, for the respondent.

PUTNAM, J.:

On December 27, 1882, one John W. Vroman and his wife executed and delivered to defendant a mortgage on certain lands in Schoharie county to secure the bond of the former conditioned to pay $3,500 and interest as therein specified. On or about March

31, 1883, by an assignment absolute on its face and citing a consideration of $3,500, defendant transferred said bond and mortgage to plaintiff. The assignment was not recorded. On the 10th day of April, 1886, defendant commenced an action to foreclose said mortgage in his own name and afterwards obtained judgment therein, under which the mortgaged premises were sold on March 5, 1887, and bid in by him for $4,183.54, he acknowledging said bid to be a satisfaction of the mortgage debt and costs. Defendant, prior to the commencement of this action, conveyed the mortgaged premises so bid in by him.

Plaintiff, claiming that, under the assignment above mentioned in consideration of the payment of $3,500, she became and remained the absolute owner of said bond and mortgage, and that she delivered said bond and mortgage to defendant to foreclose for her benefit, brought this action to recover the sum of $4,183.54 so realized by the defendant on said bond and mortgage by the sale of the mortgaged premises. Defendant contended that the assignment was made as collateral security for a loan of $1,500, and that, prior to the foreclosure of said mortgage, he had fully paid the amount of said loan, and that when he commenced the foreclosure plaintiff had no interest in said security.

On this question, in the language of the trial judge, there was "a rugged dispute between the parties." The jury have found in favor of the plaintiff; it is clearly one of those cases where the conflicting evidence given on the trial was properly submitted to the jury, and where the verdict cannot be disturbed by us. No objection was made on the trial to the submission to the jury of the evidence as to the ownership of the bond and mortgage. Nor do we understand that the learned counsel for the appellant seriously insists that we could properly on this appeal interfere with the verdict of the jury as to such ownership. In our consideration of the case, we shall, therefore, assume that plaintiff, being the owner of said bond and mortgage, delivered the same to defendant to foreclose and collect for her benefit.

The appellant urges that the alleged agreement between Mrs. Winegard and himself to foreclose the mortgage, of which she was the owner, *in his own name*, was illegal and void, and made in violation of the provisions of section 449, Code of Civil Procedure,

which provides that " every action must be prosecuted in the name of the real party in interest ; " that said agreement was contrary to the provisions of a positive statute, and that the foreclosure was an illegal proceeding in execution of an illegal agreement. That no remedy can be had in a court of justice on an illegal contract where both parties are in *pari delicto.* That hence no recovery can be had in this action.

From the evidence, it is not clear that defendant foreclosed the mortgage in his own name by direction of plaintiff. She and her husband gave testimony which, if believed by the jury, authorized a finding that appellant brought the foreclosure action in his own name, of his own volition and without the knowledge or consent of plaintiff.

Assuming, however, that an agreement was made between the plaintiff, Mrs. Winegard, and Mr. Fanning, she being the owner of the bond and mortgage, that he should foreclose the same in his own name for her benefit, does this illegal agreement deprive her of the bond and mortgage, and in effect transfer the same to Mr. Fanning — as claimed by him ? We are unable to find any authority among those cited by appellant to sustain such a claim. We are of opinion that the principle invoked by defendant does not apply to this case. Here plaintiff was the conceded owner of a bond and mortgage. She became such owner by an assignment long prior to the alleged illegal agreement. Being such owner she delivered the mortgage to her agent to collect or foreclose — at the same time making an agreement with him that the foreclosure should be conducted in his name, in violation of the provisions of the statute. This illegal agreement as to the foreclosure has been executed. Had it not been doubtless it could not be enforced. If any claim were made by either party arising directly out of the unlawful contract it could not be sustained. But we can find no authority upholding the doctrine urged by appellant that such an unlawful agreement as to the manner of foreclosing the mortgage made by her with her agent or trustee deprived plaintiff of her title thereto. Notwithstanding the illegal contract as to the manner of foreclosure, which could not be enforced, respondent remained the owner of the bond and mortgage, and could at any time, we think, demand and recover the same of defendant, or the proceeds thereof if collected.

Again, the agreement between plaintiff and defendant as to the foreclosure was not immoral or *malum in se*, but merely prohibited by statute. The right of parties who have entered into a contract which is merely *malum prohibitum* is clearly stated by Judge ANDREWS in *Pratt et al.* v. *Short et al.* (79 N. Y. 437, 445) as follows: "It is no doubt the general rule of law that no right of action can spring out of an illegal contract. And the rule that an illegal contract cannot be enforced applies as well to contracts *malum prohibitum* as to contracts *malum in se*. But it does not necessarily follow that all the consequences attending a contract which is contrary to public morals, or founded on an immoral consideration, attend and affect a contract *malum prohibitum* merely. The law in the former case will not undertake to relieve parties from the position in which they have placed themselves, or to adjust the equities between them. But in the latter case, while the law will not enforce the prohibited contract, it will take notice of the circumstances, and if justice and equity require a restoration of money or property received by either party thereunder, it will, and in many cases has given relief." (See, also, *The Utica Insurance Co.* v. *Scott* (19 Johns. 6, 7; *Rome Savings Bank* v. *Krug*, 102 N. Y. 331–335.)

In *Pratt et al.* v. *Short et al.* (*supra*) a savings institution discounted commercial paper, such discounting being prohibited by statute. It was held that the discounted paper was void, and could not be enforced. But as the institution was authorized to loan money, it could recover the money actually loaned. In other words, the institution had delivered money to parties on a prohibited security — the contract being prohibited by statute, and yet could recover the money received by defendant under such prohibited contract. So, in this case, plaintiff delivered her bond and mortgage to defendant with an unlawful agreement as to its foreclosure, but, nevertheless, justice and equity demanding that defendant should return the bond and mortgage or the amount collected thereon to plaintiff, as held in the authority above cited, the law will give her the relief to which she is entitled.

Other answers might be made to the position asserted by defendant, but we do not deem any further discussion necessary.

It is suggested by appellant that respondent is bound in this action

by the foreclosure judgment. Assuming that she consented to the foreclosure by appellant in his own name, she is undoubtedly estopped as to the defendants in the foreclosure action; but she does not seek in this action to impeach or invalidate that judgment as to the defendants therein or the purchasers thereunder. The foreclosure judgment is not an estoppel as between the plaintiff and defendant as to the questions litigated in this action. It was adjudged in the former action, *as between Fanning and the defendants therein*, that Fanning was the owner of the bond and mortgage, and as to said defendants plaintiff consented to such foreclosure in the name of Fanning, and is estopped. But the judgment in said action cannot be held to conclude plaintiff in this, because as between plaintiff and defendant the question of the actual ownership of the bond and mortgage was not tried in the foreclosure suit.

We have examined the exceptions taken on the trial, and are of the opinion that none of them require a reversal of the judgment.

If the evidence as to the deeds of Benjamin to Elmira J. Fanning, and by the latter to Robert J. Walrad, and as to the market value of the mortgaged premises was immaterial, it is clear that defendant was not injured by its reception. The jury were instructed by the trial court that if they found for the plaintiff, that she was entitled to recover $4,183 and interest. No objection or exception was made to the charge in that regard, and the jury found as instructed by the court. The evidence above referred to could not, therefore, in any manner have affected the verdict.

The court did not err in excluding the evidence of the assignment of the mortgage from Richard to Abram Winegard. This evidence related to a collateral matter, and the defendant could not contradict the evidence given by Abram Winegard in that respect. A party who cross-examines a witness as to a collateral matter is concluded by his answer. (*Carpenter* v. *Ward*, 30 N. Y. 243.)

The evidence offered by defendant to show improvements put on the mortgaged premises was immaterial; also the testimony taken on the trial of the case of *Fanning* v. *Vrooman* (the foreclosure action) was clearly incompetent.

The court below also properly sustained the objection to the following question: "Who paid the taxes on the bond and mortgage while he held it?" If defendant had offered in connection

with this question to show that he paid the taxes to the knowledge and with the consent of plaintiff the evidence might have been material. His payment of taxes, unless done with the knowledge and consent of plaintiff, would not affect her rights, and hence the evidence sought to be introduced by plaintiff was properly excluded. It will be seen that defendant in connection with the question made an offer, but not to show plaintiff's knowledge in regard to the payment of taxes.

We conclude that no errors were committed on the trial and that the judgment should be affirmed, with costs.

HERRICK, J., concurred; MAYHAM, P. J., not acting.

Judgment affirmed, with costs.