MESEROLE SECURITIES CO., INC., Appellant, *v.* JACK T. COSMAN and Others, Respondents.*

First Department, April 19, 1929.

*Martin H. Young* of counsel [*Louis Rosenberg,* attorney], for the appellant.

*Max L. Schallek* of counsel [*Strasbourger & Schallek,* attorneys], for the respondent Jack T. Cosman.

*Solomon C. Stember* of counsel [*Louis J. Rosett,* attorney], for the respondents National Evans Motion Picture Film Laboratories, Inc., Tom Evans and Mark M. Dintenfass.

FINCH, J. From a judgment dismissing the complaint on the merits the plaintiff appeals. The action is against the defendants as indorsers of two promissory notes in the sum of $4,400 each, which notes the plaintiff purchased before maturity by paying to the defendant corporation the sum of $4,000 for each note. The only issue presented upon the trial was the validity of the defense that the notes were void in the hands of the plaintiff because the discounting of the notes by plaintiff, a non-banking corporation, constituted a violation of the General Corporation Law and of the Banking Law of this State. This involves a construction of section 22 of the General Corporation Law and of section 140 of the Banking Law.

* Revg. 131 Misc. 361.

Section 22 of the General Corporation Law (as amd. by Laws of 1911, chap. 771),* in so far as material, provides:

" § 22. Prohibition of banking powers. No corporation, domestic or foreign, other than a corporation formed under or subject to the banking laws of this State or of the United States, except as permitted by such laws, shall by any implication or construction be deemed to possess the power of carrying on the business of discounting bills, notes or other evidences of debt, of receiving deposits, of buying and selling bills of exchange, or of issuing bills, notes or other evidences of debt for circulation as money, or of engaging in any other form of banking; * * *."

Section 140 of the Banking Law reads as follows:

" § 140. Prohibitions against encroachments upon certain powers of banks. No person unauthorized by law shall subscribe to or become a member of, or be in any way interested in any association, institution or company formed or to be formed for the purpose of issuing notes or other evidences of debt to be loaned or put in circulation as money; nor shall any such persons subscribe to or become in any way interested in any bank or fund created or to be created for the like purposes or either of them. No corporation, domestic or foreign, other than a National bank or a Federal reserve bank, unless expressly authorized by the laws of this State, shall employ any part of its property, or be in any way interested in any fund which shall be employed for the purpose of receiving deposits, making discounts, or issuing notes or other evidences of debt to be loaned or put into circulation as money. All notes and other securities for the payment of any money or the delivery of any property, made or given to any such association, institution or company, or made or given to secure the payment of any money loaned or discounted by any corporation or its officers, contrary to the provisions of this section shall be void.

" No person, association of persons or corporation, unless expressly authorized by law, shall keep any office for the purpose of issuing any evidences of debt, to be loaned or put in circulation as money; nor shall they issue any bills or promissory notes or other evidences of debt for the purpose of loaning them or putting them in circulation as money, unless thereto specially authorized by law.

" Every person, and every corporation, director, agent, officer or member thereof, who shall violate any provision of this section, directly or indirectly or assent to such violation, shall forfeit one thousand dollars to the People of the State."

---

* See Gen. Corp. Law, § 18, as amd. by Laws of 1929, chap. 650, effective October 1, 1929. See, also, Laws of 1929, chap. 650, §§ 2, 3.— [Rep.

It is apparent that the two sections above quoted are complementary and intended to accomplish a common purpose; section 22 of the General Corporation Law, as is expressly stated by its caption, is intended to prevent the exercise of banking powers by corporations not formed under or subject to the banking laws. With this end in mind, the restriction against the discounting of bills, notes or other evidences of debt applies only when such discounting is a part of the business of banking. This is made particularly evident by the last sentence of the section above quoted, namely, "or of engaging in any other form of banking," thus showing that all the transactions enumerated in the section were only prohibited as a part of the business of banking. The mere purchase or discounting of one promissory note or of hundreds of promissory notes is not of itself banking.

So, also, in section 140 of the Banking Law above quoted, the purpose sought to be accomplished was to prevent the exercise of banking powers by mere business corporations. The very title of the section expressly defines its scope, viz., " Prohibitions against encroachments upon certain powers of banks." An analysis of the section confirms the title. The first complete sentence places a limited restraint upon individual affiliation with associations or companies, namely, only with respect to a certain class of associations or companies, being those formed for the purpose of issuing notes or other evidences of debt to be loaned or put into circulation as money. The second sentence restricts corporations from unauthorized participation in the business of banking. In this sentence are found for the first time the expressions " receiving deposits " and " making discounts." Whether the phrase " making discounts " should be taken out of its context and read as if standing alone or should be construed in harmony with the purpose of the section as indicated by its caption, " Prohibitions against encroachments upon certain powers of banks," presents in the last analysis the real question in the case at bar. To such a query there is only one answer, namely, the application of a fundamental rule of statutory construction known under the maxim *noscitur a sociis*. In other words, " making discounts " must be held prohibited only in connection with the exercise of the business of banking. This is confirmed by the association with the phrase " receiving deposits." From the earliest times one dominant idea has been to picture banking as keeping a regular office for receiving deposits and discounts, which were later to be checked out by the customer. By chapter 236 of the Laws of 1818, which was legislation somewhat akin to that now in force, we find banking defined: " to keep any office of deposit for the purpose of discounting promissory notes."

In the early case of *People* v. *Brewster* (4 Wend. 498) the action was for a penalty for an alleged violation of the act prohibiting the carrying on of a banking business by individuals and incorporated companies unless specially authorized by law. There was no evidence that the defendant there received deposits of money, and the court in holding that the plaintiff was properly nonsuited said that the evil to be suppressed was " the keeping of an office of deposit for the purpose of carrying on any kind of banking business." The allegation in the defendants' answer here is not that the plaintiff kept a regular office for deposits and there is no evidence to that effect and hence the case last cited is exactly in point. We thus find that the word " discount " is used to denote two ideas, one, the making of a loan by a bank upon the note of its customer, the interest being taken in advance and the remainder credited to the deposit account of the customer; the other to denote a straight out purchase. (3 Words & Phrases [1st ed.], 2090.) It is the former use of the word, however, which is employed in the statutes under consideration wherein it is coupled with the receiving of deposits. In addition, the nature of the prohibition in the statutes under consideration precludes a construction which would afford to individuals a right denied to corporations. The third complete sentence of the 1st paragraph of section 140 declares void only those notes given in violation of the foregoing provisions of thep aragraph. In view, therefore, of the announced purpose of the section, as declared by its title and as appears by its context, the only reasonable intendment applies the prohibition to the making of discounts coupled with the banking business of receiving deposits and of " issuing notes or other evidences of debt to be loaned or put in circulation as money." This construction of the section is confirmed by an examination of the history of the act, which shows that it originated out of a desire on the part of the Legislature to curb the inflation of paper currency then prevalent. (Birdseye's Cumming & Gilbert's Consol. Laws [1st ed. 1909], 297, note; Paine on New York Banking Laws [7th ed. 1914], 212.) That section 140 of the Banking Law and section 22 of the General Corporation Law prohibit only the discounting of promissory notes by a corporation as a part of a banking business is likewise sustained by the authorities. Judge COMSTOCK, in construing these so-called restraining acts, in *Curtis* v. *Leavitt* (15 N. Y. 9, 68) said: " The statute of 1829 against unauthorized banking (1 R. S. 712), known as the restraining act, declares (§ 6) that ' no person, association or body corporate, except such bodies corporate as are expressly authorized by law, shall keep any office for the purpose of receiving deposits or discounting notes or bills, or issuing any evidences of debt, to be loaned

or put in circulation as money, nor shall they issue any bills or promissory notes or other evidence of debt as private bankers, for the purpose of loaning them or putting them in circulation as money, unless thereto specially authorized by law.' Some of the other sections in the same act are intended to promote the same policy, but they need not be referred to. It cannot fail to be noticed that this statute does not forbid either natural or artificial persons from entering into written engagements of any description, provided they are not issued to be loaned or put in circulation as money. Indeed, the inference is almost irresistible that corporations, whether banking or not, as well as individuals, might, at least in the opinion of the Legislature, create evidences of debt which do not fall within the particular class condemned  *  *  *."

Not by strained inference should it be held that the Legislature has prohibited corporations from engaging in the common business transaction of purchasing notes. There is a vital distinction between a purchase or discount of commercial paper by a corporation and the discounting of the same by a banking institution, crediting the proceeds and paying them out upon order. As already noted, it is against the latter transaction only that the prohibition applies. In *New York State Loan & Trust Co.* v. *Helmer* (77 N. Y. 64, 68) Judge MILLER said: " Upon the facts alleged, the question to be determined is whether the plaintiff possesses authority, under its charter, to discount notes, the same as any other banking institution, credit the proceeds, and pay out the same upon the checks of one of the parties; and not whether the plaintiff can lawfully buy and receive promissory notes and advance moneys upon the same. There is a plain distinction between the two cases; and having that distinction in view, it is quite apparent that the plaintiff exceeded its powers in discounting the notes in question, and violated the provisions of its charter and the laws of this State passed to restrain illegal banking  *  *  *."

It is submitted that the case of *Pratt* v. *Short* (79 N. Y. 437), relied upon by the respondents, is not contrary to the conclusion here reached. There the plaintiffs, assignees in bankruptcy, claimed for a savings bank the right under its charter to conduct a banking business. Its charter expressly limited its investments, and investment in commercial paper was prohibited. The court said: " It appears from the evidence in the case that the corporation in question, at, and prior to the time of the discount of the note set out in the complaint, used its funds derived from deposits and otherwise, in discounting commercial paper, and exercised the usual and ordinary powers of a bank of discount." In the case at bar the discounting of the promissory notes was an ordinary purchase; no banking

powers were involved or claimed and hence no statutory prohibition applied.

It follows that the judgment should be reversed and a new trial granted, with costs to the appellant to abide the event.

DOWLING, P. J., and McAVOY, J., concur; MARTIN and O'MALLEY, JJ., dissent.

O'MALLEY, J. (dissenting). The plaintiff, a domestic corporation organized under the Business Corporations Law, now the Stock Corporation Law, sues to recover upon two promissory notes made and delivered by a corporation, Bischoff, Inc., not here a party. The payee was the defendant Cosman, and he and his codefendants are sued as indorsers by the plaintiff, which contends that it is a holder in due course and for value. Each note was in the face amount of $4,400, but it is conceded that the plaintiff paid for each only the sum of $4,000.

All of the defendants interposed a defense to the effect that the notes were invalid in the hands of the plaintiff and that it could not recover thereon, for the reason that it had obtained title thereto contrary to law. Its acquisition of the notes, it is asserted, was in violation of certain statutes, and particularly of section 140 of the Banking Law.

The General Corporation Law (§ 22, as amd. by Laws of 1911, chap. 771)* provides that no corporation save one formed under or subject to the Banking Laws of the State, or of the United States, shall " by any implication or construction be deemed to possess the power of carrying on the business of discounting bills, notes or other evidences of debt, of receiving deposits, of buying and selling bills of exchange, or of issuing bills, notes or other evidences of debt for circulation as money, or of engaging in any other form of banking;   *   *   *."

Section 140 of the Banking Law provides among other things as follows: " No corporation, domestic or foreign, other than a National bank or a Federal reserve bank, unless expressly authorized by the laws of this State, shall employ any part of its property, or be in any way interested in any fund which shall be employed for the purpose of receiving deposits, making discounts, or issuing notes or other evidences of debt to be loaned or put into circulation as money. All notes and other securities for the payment of any money or the delivery of any property, made or given to any · such association, institution or company, or made or given to secure the payment of any money loaned or discounted by any

___

* See Gen. Corp. Law, § 18, as amd. by Laws of 1929, chap. 650, effective October 1, 1929. See, also, Laws of 1929, chap. 650, §§ 2, 3.— [REP.

corporation or its officers, contrary to the provisions of this section shall be void."

It is stipulated that this plaintiff at the time of the trial and prior and subsequent to and coincident with the transactions here in question, had engaged in numerous transactions of the same nature and of the same legal effect as those here under consideration. These transactions undoubtedly constituted in legal effect the discounting of negotiable paper, not a purchase out of surplus funds. (*Pratt* v. *Short*, 79 N. Y. 437.) This much the appellant in its brief seems not to dispute. At least it was an issue for the trial justice and has ample support in the evidence. The plaintiff obtained the notes from the defendant Cosman who indorsed them and who is sought to be held thereon as such indorser. In a strict purchase, such indorsement and liability would not be present. (1 Bouvier's Law Dictionary [Rawle's 3d Rev.], 881; 3 Words & Phrases [1st ed.], 2090; *Metcalf* v. *Morse Ironworks & Dry Dock Co.*, 84 N. Y. Supp. 582.)

On the face of the statutes it is apparent that the transactions here under consideration were in violation of both section 22 of the General Corporation Law and section 140 of the Banking Law. It seems clear, however, that section 22, *supra*, would make the discounting of negotiable paper in the case at bar merely *ultra vires.* The transaction, however, having been consummated and executed and the defendants having received the benefits therefrom, such defense would not be available. (*Nassau Bank* v. *Jones*, 95 N. Y. 115, 123; *Rider Life Raft Co.* v. *Roach*, 97 id. 378, 381; *Appleton* v. *Citizens' Central National Bank*, 190 id. 417, 420.)

Section 140 of the Banking Law, however, expressly provides that notes acquired in the manner here disclosed are void. By discounting these and other notes, the plaintiff corporation was illegally exercising banking powers and functions. (*Pratt* v. *Short*, *supra.*) The Banking Law itself is confirmatory of this conclusion for among the powers given to banking institutions is that of " discounting * * * promissory notes * * *." (Banking Law, § 106, subd 1.) It is to be noted, however, that there is no evidence here that these notes were acquired as an incident to plaintiff's authorized business or transactions or as security or collateral therefor.

To escape the plain language and purport of section 140 of the Banking Law, the plaintiff contends that it should be read as if a comma had been interposed in that portion thereof above quoted, after the word " debt." This contention is predicated upon the fact that prior to the enactment of chapter 689 of the Laws of 1892, the section and derivitive statutes had such punctuation, and

there is no apparent reason for its having been omitted. With this punctuation, the plaintiff reads the statute as merely prohibiting non-banking corporations from employing any part of their property for the purpose of making discounts " to be loaned or put into circulation as money," and as the discounting under consideration was not for the purpose of putting the notes into circulation as money, the prohibition of the statute, it is urged, is not applicable.

The answer to this is two-fold. As pointed out by the trial justice, it is unnecessary to determine whether or not the supposed change in the law was intended to insure the supervision of the Banking Department over corporations discounting commercial paper, or a monopoly to banks of such business. As stated in *de Laurent* v. *Townsend* (243 N. Y. 130, 133), " the obdurate fact remains " that the comma in question was omitted by section 87 of chapter 689 of the Laws of 1892. The statute in its present form uses apt language and permits of a plain construction. It may not be changed by us because of any supposed intent. (*Matter of Village of Middletown*, 82 N. Y. 196; *People* v. *Long Island R. R. Co.*, 194 id. 130.) It must be applied as it speaks. (*People ex rel. L. & N. Y. R. R. Co.* v. *Sohmer*, 217 N. Y. 443, 449.) We should be slow to hold that the statute does not mean what it says because at some time in the past it might have said and meant something else. (*People ex rel. Rand* v. *Craig*, 231 N. Y. 216, 220.)

The second answer to plaintiff's contention is that even before the change in the statute, and when the comma was found therein after the word " debt," a like result was reached in all cases involving and turning about the precise question here under consideration. (*Pratt* v. *Short, supra; New York State Loan & Trust Co.* v. *Helmer*, 77 N. Y. 64.) In the case last cited the comma is omitted from the statute as quoted therein (p. 69), but the source of the court's quotation (1 R. S. [Edm. ed.] 661, § 3) discloses that a comma was at the place indicated. The official Revised Statutes (1 R. S. 712, § 3) also used such comma.

The *Helmer Case* (*supra*) was an action on two promissory notes made by the defendants payable to their order and transferred to plaintiff. One of the defenses interposed was that the plaintiff was engaged in the banking business in violation of law and that the notes were discounted by the plaintiff while carrying on such business as a bank of discount and deposit in violation of its charter. With respect to this defense the court said that the question presented was whether " the plaintiff can discount notes made for that purpose, and received from the original parties before they have passed into other hands, and pay over the avails thereof to such

parties." The right to discount was claimed under the plaintiff's charter by which it was granted power to " buy or receive all kinds of property, real, personal, or mixed, or to hold the same in trust or otherwise; * * * to receive upon storage, deposit or otherwise, merchandise, bullion, specie, plate, stocks, bonds, promissory notes, * * * and to advance moneys, securities and credits upon any property, real or personal, * * *." (See Laws of 1870, chap. 686, § 3.)

It was held that while the plaintiff under its charter had authority to buy personal property, even including promissory notes of third parties, the charter was not sufficiently broad to cover " a loan of money obtained upon a promissory note by a discount of the same to the maker or holder." It was further pointed out that, even assuming that the charter was broad enough to embrace all the powers claimed by the plaintiff, it did not appear from the allegations of the answer that the notes in question were " bought, received or held, or that money was advanced " within the provisions of the charter.

Upon the allegations of the answer the question to be determined was whether the plaintiff possessed authority under its charter " to discount notes, the same as any other banking institution, credit the proceeds, and pay out the same upon the checks of one of the parties; and not whether the plaintiff can lawfully buy and receive promissory notes and advance moneys upon the same." A distinction between the two cases was drawn and the conclusion reached that the plaintiff exceeded its powers in discounting the notes in question, and violated not only the provisions of its charter but the laws of the State passed to restrain illegal banking. It was then said: " The plaintiff only possessed such powers and franchises as were especially conferred by its acts of incorporation; and these must yield and be subject to the general provisions of the Revised Statutes, as is expressly provided by section nine of the plaintiff's charter. The discounting of the notes by the plaintiff was an exercise of power which is expressly prohibited by law. The Revised Statutes (vol. 1 [Edm. ed.], 559, § 4)* declares that no corporation ' not expressly incorporated for banking purposes shall, by any implication or construction, be deemed to possess the power to discount bills, notes,' etc. As the plaintiff was not authorized to conduct the business of banking by its act of incorporation, this provision was a restriction upon its charter, and the discount of the notes in question was contrary to law. Such discount of the notes is also in conflict with other provisions of

---

* 1 R. S. 600, § 4; 1 R. S. (Edm. ed.) 557, § 4.— [REP.

law against unauthorized banking. By section 3 (1 R. S. [Edm. ed.], 661) it is declared: ' No incorporated company, without being authorized by law, shall employ any part of its effects, or be in any way interested in any fund that shall be employed for the purpose of receiving deposits, making discounts or issuing notes, or other evidences of debt to be loaned or put into circulation as money.' By section 5: ' All notes and other securities for the payment of any money, or the delivery of any property, made or given to any such association, institution or company, that shall be formed for the purpose expressed in the first section of this title, or made or given to secure the payment of any money loaned or discounted by any incorporated company, or its officers, contrary to the provisions of the third section of this title, shall be void.' These enactments are certainly very explicit, and in connection with others, some of·which provide for the infliction ·of penalties for a violation of different provisions of the act, indicate quite clearly a settled policy of the Legislature to prevent corporations which are not formed for banking business from carrying on or in any way interfering with the same. The Legislature having thus aimed to restrain illegitimate and improper banking, the courts are bound to carry out the law and to see that it is not violated. And such has been the uniform course of decision when questions have arisen involving the construction to be placed upon statutory provisions relating to the subject of banking." (Citing cases.)

It is urged by the appellant that this decision was intended to apply only to a corporation that was engaged or attempting to engage in the banking business and that it has no application to a corporation not so engaged. Here, it is urged that the plaintiff is a business corporation and so far as appears was in no way engaged in the banking business, as was the plaintiff in the *Helmer* case. As we read the decision, however, it cannot be so limited. The court's construction of the Restraining Act seems to be sufficiently broad to make every act of discount by a corporation not authorized to do a banking business unlawful. The case cited was considered and applied again in *Pratt* v. *Short* (*supra*).

In that case a safe deposit and savings institution, upon the application of the defendants, constituting the firm of Short & Co., discounted a note made by one Van Cleek for $1,900, payable to the order of Short & Co., and indorsed by the payees who received the proceeds of the discount. The note had been taken by Short & Co. upon a debt owing by the maker. Not being paid at maturity the note went to protest. The safe deposit company became a bankrupt. The plaintiffs were assignees in bankruptcy, and as such brought the action alleging three counts, *first*, a cause of action

against the defendants as indorsers of the note; *secondly*, for money lent and advanced by the safe deposit company to the defendants upon the security of the note, and *third*, for money had and received by them, to and for the use of the corporation.

It should be noted here that the discounting party was a savings bank. The court, however, adopted the reasoning and conclusion of the *Helmer* case and stated that while the charter of the savings institution authorized it to loan its capital and funds, still the discounting of commercial paper was not open to it. It held that the principal functions of a corporation possessing general banking powers were " the power to issue notes to circulate as money, and discounting commercial paper," and that the savings institution, not being incorporated under the Banking Laws, lacked the power to discount commercial paper.

In the *Pratt* case the 14th section of the corporation's charter (Laws of 1868, chap. 816) incorporated the provisions of section 4 of title 3 of chapter 18 of the Revised Statutes (1 R. S. 600), then in effect, which provided, like the present section 22 of the General Corporation Law, that " no corporation created, or to be created, and not expressly incorporated for banking purposes, shall by any implication or construction, be deemed to possess the power of discounting bills, notes, or other evidences of debt, * * *."

In the *Pratt* case the court further held that not only was the discounting *ultra vires*, but that it was illegal. Such decision was expressly based upon the decision of the same court in the *Helmer* Case (*supra*, p. 444). ANDREWS, J., after quoting the material parts of the Revised Statutes (1 R. S. 712, §§ 3, 5) which provided that " No incorporated company, without being authorised by law, shall employ any part of its effects, or be in any way interested in any fund that shall be employed, for the purpose of receiving deposits, making discounts or issuing notes or other evidences of debt, to be loaned or put into circulation as money;" and that all notes " made or given to secure the payment of any money loaned or discounted by any incorporated company or its officers, contrary to the provisions of the third section of this title, shall be void," went on to say: " I have no difficulty therefore in reaching the conclusion that the discount by the corporation of the note in question, was unlawful, and upon general principles of law, applicable to the subject as well as by the terms of the restraining act, the security taken by the company was void, and furnishes no ground of action."

If a corporation which is possessed of partial banking powers, such as was the plaintiff in the *Pratt Case* (*supra*), is prohibited by the Restraining Act from discounting notes, how much more so

should the ordinary business corporation, such as the plaintiff here, be prohibited from so doing. While it is no doubt true that the discount of paper might not in itself constitute the business of banking, still as discounting is part of the general business of banking (1 Morse Banks & Banking [6th ed.], § 50, pp. 164, 165), the Legislature has seen fit to limit the exercise of such function, so far as corporations are concerned, to banking institutions alone. The discounting of the note sued upon being contrary to the provisions of law and such notes being void under section 140 of the Banking Law, plaintiff was not entitled to have any recovery thereon. With other rights and remedies which it may have in the premises, we are not now concerned. Suffice it to say that it may not succeed in the present action.

It follows, therefore, that the judgment appealed from should be affirmed, with costs.

MARTIN, J., concurs.

Judgment reversed and a new trial ordered, with costs to appellant to abide the event.